# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35221

|  |  |  |
|---|---|---|
| ARTHUR WILLIAM MICHALK, | ) | |
| | ) | Boise, August, 2009 Term |
| Plaintiff/Respondent | ) | |
| v. | ) | 2009 Opinion No. 128 |
| | ) | |
| WENDI LEE MICHALK | ) | Filed: October 20, 2009 |
| | ) | |
| Defendant/Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Terry R. McDaniel, Magistrate Judge.

The decision of the magistrate court is affirmed. Respondent is awarded attorneys fees on appeal. Costs are awarded to Respondent.

Wendi Lee Michalk, *pro se* for appellant.

Audrey Numbers, Boise, for respondent.

_____

W. JONES, Justice

## NATURE OF CASE

Pro se Appellant Wendi Michalk (Wendi) appeals directly to the Supreme Court, a divorce decree entered by Magistrate Judge Terry R. McDaniel, dissolving her marriage to Respondent Arthur William Michalk (Art), dividing the community assets and debts, and granting Wendi and Art joint legal and physical custody of their minor child. Wendi essentially argues that she was not afforded a fair trial. Additionally, Wendi argues that Art's prior conviction for two counts of lewd and lascivious conduct with a minor should have precluded the magistrate court from granting the parties joint legal and physical custody of their child.

1

**FACTS AND PROCEDURAL BACKGROUND**

Art states that he and Wendi were married on July 17, 1998, but Wendi states that they were married on July 16, 1999. Although Art and Wendi disagree on the date of the wedding, their disagreement is immaterial to the case. They had one child, C.A.M., born on August 26, 1999.

In early 1998, Art was convicted of two counts of lewd and lascivious conduct with a minor, stemming from incidents[1] with his twelve year old daughter from a previous relationship and his daughter's friend. Art was sentenced to seven years in prison, with the court retaining 180 days jurisdiction to review whether or not to place Art on probation. After completing a rider in Cottonwood, Idaho, Art was released from custody and placed on probation for seven years. As a condition of his probation, Art was required to participate in Alcoholics Anonymous meetings and complete recommendations by SANE Solutions (SANE), a community based program that provides treatment to sexual abuse offenders[2].

Art met Wendi after his conviction and during his probation at an Alcoholics Anonymous meeting in 1998. In July of 1999, Wendi signed an agreement to act as Art's supervisor in the SANE program. As his supervisor, Wendi was aware of Art's conviction and the nature of his crime. In June of 2000, Art's SANE contract was amended to allow him to have unsupervised contact with C.A.M.; it was signed by Art's SANE counselor, his probation officer, and Wendi. Art testified that if Wendi had not signed the addendum, Art would not have been permitted to have unsupervised contact with C.A.M. Pursuant to the addendum, at various times Art has had unsupervised contact with C.A.M. since June of 2000. With knowledge of Art's prior conviction, Wendi allowed Art unsupervised visits with C.A.M.

Art testified that sometime in 2003 Wendi was experiencing mental problems and voluntarily committed herself to the Franklin House for mental health treatment for 14 days. He further testified that Wendi did not inform him that she admitted herself to the Franklin House; Art found out only after Wendi's landlord let Art into her trailer and he found a note she wrote stating that she went to the Franklin House and left C.A.M. in the care of a friend. Art took over caring for his son full-time for the remaining 12 days that Wendi was at the Franklin House.

---

[1] The record is unclear whether the two counts stemmed from one incident involving both girls, or whether there were two separate incidents.

[2] See http://www.trhs.org/SANESolutions/SANEOverview.aspx (last visited July 8, 2009).

The parties separated in September of 2003 and Wendi moved to Oregon with C.A.M. to be closer to Wendi's family. She then returned to Idaho with C.A.M. in June of 2005 and resumed living with Art.

From June of 2005 through February of 2007, the parties lived together in the same household and jointly cared for C.A.M. During this time, Wendi attended school and worked part-time at the American Red Cross. Art was the childcare provider when Wendi was at school or work.

The parties split for the final time in February of 2007 and they agreed that Art could have unsupervised visitation with C.A.M. every other weekend, including overnight visits, and every Wednesday afternoon. Art filed for divorce on April 12, 2007, alleging irreconcilable differences and requesting a visitation schedule with C.A.M. Wendi filed an answer and counterclaim on May 21, 2007, with the help of appointed Legal Aid attorney Roderick D. Gere (Gere). Therein, Wendi confirmed Art's request for joint legal custody of C.A.M., setting out a visitation schedule that allowed Art to visit C.A.M. every other weekend, with no overnight visitation until Art obtained a separate bed for C.A.M. Wendi also set out limitations that Art was not permitted to sleep or bathe with C.A.M. and was required to provide age-appropriate entertainment for him.

On August 12, 2007, Wendi unilaterally stopped allowing Art to visit C.A.M. Art testified that until this date, with knowledge of Art's prior conviction, Wendi had never expressed concern about Art taking care of C.A.M.; Art has not seen his son since that date.

On September 6, 2007, Gere filed a motion to withdraw as counsel, alleging that Wendi's conduct had caused a breakdown in their attorney/client relationship. On the day set for Wendi's attorney's motion to withdraw, September 25, 2007, Wendi waived her attorney/client privilege by demanding that her attorney explain to the court on the record why he wanted to withdraw. Gere explained that Wendi would not follow his advice regarding the custody issues, nor did she follow his instructions that she not file documents with the court without his knowledge. The court granted Gere's motion to withdraw and informed Wendi that she had twenty days in which to file a written statement with the court specifying whether she was going to proceed in the case pro se or through another attorney. Once Gere withdrew, and throughout the remainder of the trial, Magistrate Judge McDaniel took steps to ensure that Wendi's rights were protected, informing her of necessary steps in order to comply with procedural rules. The court informed

3

Wendi that if she did not comply with the requirements set forth in the order of withdrawal that a default could be entered against her in the case. In violation of I.R.C.P. 11(b)(3), Wendi did not file the written notice within the twenty day period required by the court. On October 18, 2007, Wendi filed a so-called "Notice to the Court," wherein she complained the court had violated her constitutional rights by not appointing another counsel to represent her after Gere withdrew.

On October 22, 2007, Art's attorney, Audrey Numbers (Numbers) filed a three-day notice of intent to take default because of Wendi's failure to follow I.R.C.P. 11(b)(3), and Numbers certified that Wendi was sent a copy of such notice. On October 31, 2007, the court entered a default; however, the court did not enter a default judgment against Wendi. On November 13, 2007, Wendi filed an appeal of that decision to this Court; the appeal was dismissed because there was no final appealable order. On November 17, 2007, the day of the pre-trial conference, Wendi filed a motion to reconsider default; the court granted the motion and set aside the default. At this pre-trial conference the court informed the parties that they were bound by the pleadings as they existed at that time. The court informed Wendi that in order to change the pleadings she would have to request an amendment under the rules.

On December 24, 2007, Wendi attempted to file an "Amended Counter Complaint," but she did not follow the Idaho Rules of Civil Procedure by requesting leave of the court to file an amended counterclaim, nor did she send copies of the pleadings to Art's attorney. Because the rules were not followed, the court declined to consider the Amended Counter Complaint.

The day before trial, on January 2, 2008, Wendi filed a motion to vacate the trial and to extend discovery. She also filed a motion to issue subpoenas in support of the so-called "Counter Complaint." Wendi did not send or hand-deliver copies of any of these pleadings to Art's attorney. On the day of trial, January 3, 2008, the court addressed the motions filed by Wendi; Numbers objected because Wendi did not give notice of any of the motions. The court denied Wendi's motions, finding that Wendi's failure to do any discovery in the three months between the date that Gere withdrew and when the trial commenced was inexcusable; the court also found that Art would be extremely prejudiced if trial were delayed because Wendi had unilaterally denied him any visitation with C.A.M. since August of 2007.

At the beginning of trial, Numbers attempted to stipulate to how the property would be divided. Wendi refused to respond to the request and remained silent throughout the remainder of the trial proceedings, including but not limited to requests by the court for her opening and

4

closing statements, objections to exhibits, cross-examinations of any witnesses, or the presentation of any testimony or exhibits on her own behalf during the trial.

During trial, Art testified that he had a decent home where C.A.M. would stay during visits, his extended family has a strong relationship with C.A.M., he spent a lot of time caring for C.A.M. without Wendi's help over the years, and Wendi never expressed any concern about Art being alone with C.A.M. until she unilaterally denied him visitation with his son. Additionally, Art testified that he never did anything intentionally to harm C.A.M. The only times C.A.M. was harmed in Art's care were accidents, including an incident when C.A.M. was wrestling with Art and cut his lip and a time when Art needed help getting off the couch and unintentionally hurt C.A.M.'s shoulder.

After the trial concluded, the magistrate court took the case under advisement and issued Findings of Fact and Conclusions of Law. The court then entered a Judgment and Decree of Divorce. Therein, the court dissolved the parties' marriage and granted them joint legal and physical custody of C.A.M., with Wendi having primary physical custody and Art having reasonable visitation upon completing additional counseling and a polygraph. The court also set out child custody payment terms, including giving a credit to Art for child support while Wendi and C.A.M. were living with him, and divided the parties' property and debt.

After unsuccessfully filing various motions in the district court before Judge Copsey and a certified question of law in federal court, Wendi appealed to this Court. She lists twenty-three issues on appeal. Because Wendi repeated issues, this Court condensed the issues and addressed each in a twelve-part analysis.

Wendi requests attorney fees and costs on appeal pursuant to I.A.R. 35(a)(5) and I.A.R. 40. Art requests attorney fees on appeal pursuant to I.C. §§ 12-121 and 12-123.

## STANDARD OF REVIEW

Child custody determinations are committed to the sound discretion of the magistrate judge. *Danti v. Danti*, 146 Idaho 929, 934, 204 P.3d 1140, 1145 (2009). A custody award will not be regarded as an abuse of discretion so long as the trial court: (1) recognized the issue as one of discretion; (2) acted within the outer limits of its discretion and consistently with the legal standards applicable to the available choices; and (3) reached its decision through an exercise of reason. *Id.* An abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by a

5

particular custody award or modification. *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). A magistrate's findings of fact, however, will be upheld if they are supported by substantial and competent evidence and are not clearly erroneous. *Danti*, 146 Idaho at 934, 204 P.3d at 1145. If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Nelson,* 144 Idaho at 713, 170 P.3d at 378.

This Court freely reviews questions of law. *Barmore v. Perrone*, 145 Idaho 340, 343, 179 P.3d 303, 306 (2008).

## ANALYSIS

Pro se civil litigants are not accorded special latitude merely because they chose to proceed through litigation without the assistance of an attorney. During trial, Magistrate Judge McDaniel correctly explained to Wendi that the court was required to hold her to the same standard of care that it would any attorney, despite the fact that she was representing herself in the proceeding. "Pro se litigants are held to the same standards and rules as those represented by an attorney." *Suitts v. Nix*, 141 Idaho 706, 709, 117 P.3d 120, 123 (2005) (quoting *Twin Falls County v. Coates*, 139 Idaho 442, 445, 80 P.3d 1043, 1046 (2003)). Moreover, "Pro se litigants are not accorded any special consideration simply because they are representing themselves and are not excused from adhering to procedural rules." *Nelson*, 144 Idaho at 718, 170 P.3d at 383 (citing *Sammis v. Magnetek, Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997)). Thus, Wendi's arguments in support of the issues she raises on appeal were analyzed within the same standards and rules that every attorney in this jurisdiction is required to follow.

It is well established that a litigant may not remain silent as to claimed error during a trial and later raise objections for the first time on appeal. *Barmore*, 145 Idaho at 343, 179 P.3d at 306. Additionally, substantive issues will not be considered for the first time on appeal. *Id*. Accordingly, this Court will not consider any issue on appeal that Wendi failed to properly preserve during trial. Because Wendi chose to remain silent during the entirety of the trial proceedings, this Court can consider very few, if any, of the issues that Wendi raises on appeal. For the sake of retaining some amount of clarity, each of the twenty-three issues raised by Wendi will be repeated verbatim and addressed in turn.

### A. Issues raised by Wendi on appeal[3]

    1. <u>Idaho judiciary bound by sworn and signed oath</u>

---

[3] Each of the following underlined, numbered statements of issues are in the language used by Wendi in her brief.

Wendi argues that Magistrate Judge McDaniel ignored the United States Constitution and unspecified federal statutes when he "issued several illegal verbal orders," which she alleges amounted to treason. Wendi did not cite to any portion of the record to support her argument. In fact, many of the issues that Wendi raises on appeal are barred by the Idaho Appellate Rule that requires appellants to specify the issues they are raising and provide legal and factual support for those arguments. I.A.R. 35(a)(6), which governs the contents of appellate briefs, requires that "[t]he argument . . . contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." This Court has held that issues on appeal that are not supported by propositions of law or authority are deemed waived and will not be considered. *Wheeler v. Idaho Dept. of Health & Welfare*, 147 Idaho 257, __, 207 P.3d 988, 997 (2009). Because Wendi failed entirely to support her argument with citations to any evidence in the record or relevant legal authority, this Court declines to review the argument.

2. Idaho judiciary bound by Supreme Law of the Land

Wendi asserts a Supremacy Clause argument, alleging that Magistrate Judge McDaniel "IGNORED the Supremacy of the United States Constitution and Codes in outright TREASON against the US Constitution, Codes, and Treaties." (emphasis in original). However, Wendi failed to cite to any portion of the record to support her argument. See *Wheeler*, 147 Idaho at __, 207 P.3d at 997.

Thus, this Court declines to review the argument.

3. Judicial and attorney fraud before the court

Wendi argues that Art violated I.C. § 32-11-209 because he did not disclose his past conviction for lewd and lascivious conduct with a minor "within the first pleading or in an affidavit attached to the first pleading identify[ing] all issues under subsection (a)(2)." I.C. § 32-11-209(a)(2) provides:

> In a child custody proceeding each party, in its first pleading *or in an attached affidavit*, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:
> . . .
> Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence,

protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding.

(Emphasis added). Wendi's argument fails because I.C. § 32-11-209 only requires a party to disclose information about proceedings that could affect the custody proceeding "in its first pleading *or in an attached affidavit*."[4] Art filed a Verified Complaint for Divorce on April 13, 2007. He filed an Affidavit of Arthur Michalk on April 17, 2007, only four days after filing his first pleading, wherein he disclosed his prior convictions to Wendi and the magistrate court. Wendi did not file an Answer and Counterclaim until May 21, 2007, over a month after Art filed the affidavit; Wendi cannot argue that she was prejudiced by Art's timing in filing the affidavit. Finally, Wendi did not raise this issue before the trial court and is barred from doing so now. "A party's failure to object to action by the trial court precludes a party from challenging that action on appeal." *Mackowiak v. Harris*, 146 Idaho 864, 866, 204 P.3d 504, 506 (2009). For the above reasons, this Court declines to review Wendi's argument.

4. Deprivation of Equality of Protection under the Law

Wendi argues that the magistrate court erred because it failed to stay the trial proceedings until Art furnished the court with information about his prior convictions, pursuant to I.C. § 32-11-209(a). That statute provides: "In a child custody proceeding each party, in its first pleading or in an attached affidavit, shall give information . . . [regarding] any proceeding that could affect the current proceeding, including proceedings . . . relating to domestic violence." However, I.C. § 32-11-209(b) goes on to state: "If the information required by subsection (a) of this section is not furnished, the court, upon motion of a party or its own motion, *may* stay the proceeding until the information is furnished." (Emphasis added). Thus, contrary to what Wendi argues on appeal, the relevant statutory language is discretionary, not mandatory. The court was well within its discretion to allow the proceedings to continue; Wendi has not shown otherwise. In addition, on his own initiative, Art provided the court with information about his prior convictions only four days after filing his complaint.

---

[4] Note that I.C. § 32-11-209(a)(2) appears to limit the information that a party must disclose proceedings related to "domestic violence, protective orders, termination of parental rights, and adoptions." It is not clear whether Art's prior conviction fits within the limitations set forth in I.C. § 32-11-209(a)(2), as his conviction is wholly unrelated to the divorce and custody proceedings at issue and there are no allegations of domestic violence in the present case. Thus, Art may not have been required to make the disclosure to the court. However, neither party raises this issue on appeal.

Moreover, Wendi never raised this issue below and is now barred from doing so because "a party's failure to object to action by the trial court precludes a party from challenging that action on appeal." *Mackowiak*, 146 Idaho at 866, 204 P.3d at 506. Thus, this Court declines to review the issue on appeal.

5. Deprivation of Equality of Protection under the Law

Wendi argues that the magistrate court erred because it did not order an investigation by the Department of Health and Welfare pursuant to I.C. § 32-717C. That statute requires an investigation be conducted when an allegation of child abuse is made during divorce proceedings. I.C. § 32-717C provides:

> When, in any divorce proceeding or upon request for modification of a divorce decree, an allegation of child abuse or child sexual abuse is made, implicating either party, the court shall order that an investigation be conducted by the department of health and welfare. A final award of custody or visitation may not be rendered until a report on that investigation is received by the court. That investigation shall be conducted by the department within thirty (30) days of the court's notice and request for investigation.

In this case, Wendi failed to make an allegation on the record of child abuse or child sexual abuse. Under the plain language of the statute, Wendi's argument is barred because she did not raise this issue below. *Mackowiak*, 146 Idaho at 866, 204 P.3d at 506. Accordingly, this Court declines to review this issue on appeal.

6. Deprivation of Equality of Protection under the Law

Wendi argues that the magistrate court erred because it "refused to adhere to the [I.C. §] 32-717B(5) and [I.C. §] 39-6303 definitions of an habitual sexual and domestic offender," thereby denying Wendi and C.A.M. their "[U.S.] Constitutional civil rights to Equality of Protection under the law, due process and substantive due process." I.C. § 32-717B(5) provides: "There shall be a presumption that joint custody is not in the best interests of a minor child if one (1) of the parents is found by the court to be a habitual perpetrator of domestic violence as defined in section 39-6303, Idaho Code." I.C. § 39-6303(1) defines "domestic violence" in relevant part as "the physical injury, sexual abuse or forced imprisonment or threat thereof of a family or household member, or of a minor child by a person with whom the minor child has had or is having a dating relationship . . . ." Wendi assigns error to the court's failure to decide that joint custody was not in the best interest of C.A.M. because, according to Wendi, Art is a habitual perpetrator of domestic violence. She stated to the court during a pre-trial hearing that it

should consider "[Art's] 1995 conviction for lewd and lascivious conduct with minors, his 1998 conviction of lewd and lascivious [conduct] with minors, and a child endangerment of 2000."

Wendi did not provide the court with any evidence supporting her claims, notwithstanding the court's clear admonition to Wendi:

> [T]he fact that you'll come in and -- and say, he's been convicted of this, that's not proof. I need to have the actual judgment of conviction; okay? . . . [T]hat's the rules of evidence . . . You can't just come in and say something, I have to have evidence of it.

This Court will not consider issues raised for the first time on appeal. *Mackowiak*, 146 Idaho at 866, 204 P.3d at 506. Because Wendi failed to present evidence of her claim that Art is a habitual perpetrator of domestic violence to the magistrate court and did not raise any objection during trial, she has not preserved this issue for appeal. *Mackowiak*, 146 Idaho at 866, 204 P.3d at 506. Therefore, this Court declines to consider her argument.

However, even if Wendi had preserved this issue for appeal, I.C. § 32-717B(5) merely provides a "presumption that joint custody is not in the best interests of a minor child" if a parent is a "habitual perpetrator of domestic violence." Despite Wendi's failure to raise this issue below, Art presented ample evidence during trial to rebut this presumption. Art testified that he had a decent home where C.A.M. would stay during visits, he never did anything intentionally to harm C.A.M., his extended family has a strong relationship with C.A.M., he spent a lot of time caring for C.A.M. without Wendi's help over the years, and Wendi never expressed any concern about Art being alone with C.A.M. until she unilaterally denied him visitation with his son. Wendi, on the other hand, failed entirely to present any evidence whatsoever during trial. Accordingly, this Court declines to hold that Art failed to rebut the presumption in I.C. § 32-717B(5).

Moreover, the record does not support Wendi's claim that Art's conduct meets the definition of a "habitual perpetrator of domestic violence" pursuant to I.C. § 32-717B(5). The record shows that Art was convicted of two counts of lewd and lascivious conduct with a minor; one count involved his twelve year old daughter and another count involved his daughter's friend. "Habitual" is defined as "customary; usual . . . recidivist." BLACK'S LAW DICTIONARY (8th ed. 2004). "Perpetrator" is defined as "a person who commits a crime or offense." BLACK'S LAW DICTIONARY (8th ed. 2004). Thus, Art must have committed more than one incident of domestic violence for the magistrate court to apply the presumption set forth in I.C. § 32-

10

717B(5). The definition of "domestic violence" in I.C. § 39-6303(1), as applied in this case, would require a showing that Art had sexually abused a family or household member or a minor child of a person with whom he had a dating relationship. Art's conduct with his twelve year old daughter clearly fits within this definition. However, there is no evidence in the record that his daughter's friend fits within the definition of a person against whom Art could perpetrate "domestic violence" as contemplated by the statute. That is, the record does not show that Art's daughter's friend was a family or household member or a minor child of a person with whom he had a dating relationship. Thus, the only possible way that Art could be a "habitual perpetrator of domestic violence," as contemplated by I.C. § 32-717B(5), is if there were more than one allegation on the record of physical or sexual abuse against his daughter, another family member, or the child of someone with whom he had a dating relationship. Art testified that C.A.M. got hurt a few times while he was in Art's care, but those occurrences appear to be nothing more than normal childhood injuries and they certainly did not amount to abuse. Although Wendi contends that Art was charged with child endangerment in 2000, she did not produce evidence to support her assertion and this Court cannot merely rely on her word. Wendi has failed to show that Art fits within the definition of "habitual perpetrator of domestic violence" under I.C. § 32-717B(5). Even if Wendi had properly preserved this issue for appeal, the magistrate court did not abuse its discretion because it recognized its discretion in the case, it acted within the outer limits of its discretion and consistently with the applicable legal standards, and reached its decision through an exercise of reason. Thus, even if this Court reviews this issue on the merits, the magistrate court did not err.

7. <u>Tampering with the evidence</u>

Wendi argues that the magistrate court erred in denying her motion requesting to take C.A.M. out of state to visit his 104-year-old great-grandmother. I.A.R. 35(a)(6) requires that "[t]he argument . . . contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." Because the record is bereft of such a motion, Wendi's argument is barred. See *Wheeler*, 147 Idaho at __, 207 P.3d at 997. Thus, this Court declines to review this argument.

11

8. Unconstitutional creation of law, Trespass outside of jurisdiction, Deprivation of equality of access to the courts and protection under the law, Deprivation of due process and substantive due process

Wendi alleges that the magistrate court erred in denying her "right to file co-defensive motion and to have heard co-defensive motion . . . stating motion MUST be filed through counsel where no such law of restriction exists." (emphasis in original). It is completely unclear what Wendi is arguing and she does not cite to any portion of the record to support her argument. Under I.A.R. 35(a)(6), Wendi's argument is barred. See *Wheeler*, 147 Idaho at __, 207 P.3d at 997. This Court declines to review this argument.

9. Tampering with the evidence, Altering official documents, Trespass outside of jurisdiction, unconstitutional deprivation of the Supremacy of the US Constitution and laws, Deprivation of civil rights to equality of access to the courts and protection under the law

Wendi assigns error because the magistrate court did not serve Wendi's filings upon Art's attorney, a right Wendi claims she was entitled to because the court waived her fees and costs as an indigent person pursuant to I.C. § 31-3220(6). The statute that Wendi cites in support of her argument provides:

> The officers of the court shall issue and serve all *process*, and perform all duties in cases in which the person is found by the court to be indigent. Witnesses shall attend as in other cases, and the same remedies shall be available in other civil cases. Payment of fees for service of process and witnesses, *where required*, shall be paid out of the district court fund of the county in which the action is filed.

I.C. § 31-3220(6) (emphasis added).

Rule 4 governs service of process, generally meaning the summons and complaint. See I.R.C.P. 4. Rule 5 governs service of "other papers." See I.R.C.P. 5. Wendi has not specified which documents she believes the magistrate court should have served on opposing counsel. Thus, this Court has no information as to whether the documents to which she refers are of the kind that the officers of the court had the duty to serve. There is not enough information before this Court for it to opine whether the magistrate court erred in failing to serve process.

Moreover, although there is little to no appellate authority on the issue of cost and fee waivers for pro se civil litigants, nothing in the rules indicates that such a waiver relieves a party from obtaining copies of its filings and serving those copies on opposing counsel. See I.C. § 31-

12

3220. The statutory language "where required" suggests that the court must specifically enter an order for payment of fees for service of process. I.C. § 31-3220(6). No such order was entered in this case; Wendi did not move the magistrate court to issue and serve all process on opposing counsel, nor has she presented this Court with any authority showing that the magistrate court was required to enter an order sua sponte requiring the officers of the court to issue and serve all process on opposing counsel. For an issue to be appealable to this Court, there must have been an adverse ruling by the lower court. *McPheters v. Maile*, 138 Idaho 391, 397, 64 P.3d 317, 323 (2003). Wendi never moved for the court to complete service of process, so this particular issue was not raised below. Thus, Wendi may not raise this issue on appeal. See *Mackowiak*, 146 Idaho at 866, 204 P.3d at 506.

10. Fraud before the court

Wendi argues that the magistrate court should have sanctioned Numbers for making allegedly inconsistent statements that she "knew nothing regarding satisfaction of child support judgments and adjustments," and that there was "no evidence that either satisfaction of judgment was ever applied to [Art's] arrears." Wendi does not cite to the record in support of this contention; there is no indication that Numbers committed fraud, or that the court erred in failing to sanction her for the alleged fraud.

Likewise, Wendi asserts that the magistrate court should have sanctioned Numbers for deceiving the court by stating that she "had no understanding of [Wendi's] income, when in fact [Numbers] had been provided pay-stub evidence." Again, Wendi does not cite to the record and there is no evidence that Numbers was deceitful or that the court erred in failing to sanction her for the alleged deceitfulness. Because Wendi fails to support both her arguments with citations to any relevant legal authority, this Court declines to review the arguments. See *Wheeler*, 147 Idaho at __, 207 P.3d at 997.

11. Mental incapacity and extreme emotional prejudice

Wendi alleges that Magistrate Judge McDaniel acted "solely out of emotional mental imbalance and illegal prejudice." Again, Wendi does not provide support for her argument, except to claim that the judge's actions resulted in "multiple direct violations of Idaho statute, multiple actions in direct defiance of the supremacy of the Constitution and laws of the United States of America." Because Wendi fails to support her argument with citations to evidence in

13

the record or relevant legal authority, this Court declines to review this argument. See also *Wheeler*, 147 Idaho at __, 207 P.3d at 997.

12. <u>Unconstitutional creation of law, Trespass outside of jurisdiction, Deprivation of equality of access to the courts and protection under the law, Deprivation of due process and substantive due process, Tampering with the evidence, Altering official documents, Trespass outside of jurisdiction, unconstitutional deprivation of the Supremacy of the US Constitution and laws, Deprivation of civil rights to equality of access to the courts and protection under the law, Judicial and attorney fraud before the court, Mental and extreme emotional prejudice</u>

Wendi calls for "legislative impeachment" of Magistrate Judge McDaniel for allegedly, among other things, "conducting war against the US Constitution," "enact[ing] multiple acts of clear, indefensible, unmitigated and inarguable outright treason," and engaging in conduct deserving of "criminal indictment and prosecution." Indeed, Magistrate Judge McDaniel is to be commended for his demeanor and temperament in dealing with the outrageous and irrational arguments made by Wendi as well as with her contentious and outrageous behavior. His restraint and actions to help Wendi were remarkable. Wendi provides absolutely no support for any of these claims. In accordance with I.A.R. 35(a)(6), her claim is barred. See *Wheeler*, 147 Idaho at __, 207 P.3d at 997. More importantly, this Court does not have authority to commence legislative impeachment proceedings against Judge McDaniel. "The court for the trial of impeachments shall be the senate." IDAHO CONST. art. V § 3. "The powers of the government of this state are divided into three distinct departments . . . and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others . . . ." IDAHO CONST. art. II § 1. Accordingly, this Court declines to review this argument.

**B. *Attorney fees on appeal***

Wendi requests attorney fees pursuant to I.A.R. 35(a)(5) and costs pursuant to I.A.R. 40. This Court denies her request on three grounds. First, Wendi has not cited to any statutory provision authorizing an award of attorney fees. See *Commercial Ventures, Inv. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 219, 177 P.3d 955, 966 (2008); *Gilman v. Davis*, 138 Idaho 599, 603, 67 P.3d 78, 82 (2003). Second, even if she had properly requested attorney fees, Wendi is not the prevailing party in this action. See *Schultz v. Schultz*, 145 Idaho 859, 866, 187

14

P.3d 1234, 1241 (2008). Third, this Court has long held that pro se litigants are not entitled to attorney fees. See *Barbee v. WMA Securities, Inc.*, 143 Idaho 391, 397, 146 P.3d 657 (2006); *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 377, 973 P.2d 142, 148 (1999); *Curtis v. Campbell*, 105 Idaho 705, 707, 672 P.2d 1035, 1037 (1983). For the reasons stated, Wendi is not entitled to attorney fees or costs on appeal.

Art requests attorney fees pursuant to I.C. § 12-121 and I.C. § 12-123. An award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003). When deciding whether attorney fees should be awarded under I.C. § 12-121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation. *Id.* When Wendi failed to properly amend her pleadings, she left the magistrate court with only her answer and counterclaim to consider. In those pleadings Wendi requested joint physical and legal custody of C.A.M., with Wendi having primary physical custody and Art having reasonable visitation. It is frivolous for her to argue on appeal that Art should not have been granted joint custody when that is the only request that Wendi properly made before the magistrate court. Accordingly, this Court grants Art's request for attorney fees on appeal pursuant to I.C. § 12-121. Attorney fees are not available on appeal under I.C. § 12-123. See *Bird v. Bidwell*, 147 Idaho 350, __, 209 P.3d 647, 650 (2009).

## V. CONCLUSION

We affirm the decision of the magistrate court. Respondent is awarded attorney fees on appeal. Costs are also awarded to Respondent.

Chief Justice EISMANN and Justices BURDICK, J. JONES and HORTON, **CONCUR.**