# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37998

| | | |
|---|---|---|
| ROCKY MOUNTAIN POWER, a division of PacifiCorp, an Oregon corporation, | ) ) ) | |
| Plaintiff-Respondent, | ) ) | Boise, December 2011 Term |
| v. | ) ) | 2012 Opinion No. 26 |
| STANLEY K. JENSEN and CATHERINE C. JENSEN, as trustees of the STANLEY AND CATHERINE JENSEN FAMILY LIVING TRUST; | ) ) ) ) ) | Filed: January 26, 2012 Stephen Kenyon, Clerk |
| Defendants-Appellants, | ) ) | |
| and | ) ) | |
| STEWART A. JENSEN; BRIAN D. PEARSON; and JOHN DOES 1-20, | ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Oneida County. Hon. Robert C. Naftz, District Judge.

The district court order granting summary judgment is <u>affirmed</u>. No attorney's fees are awarded. Costs are awarded to Respondent.

Adam J. McKenzie, Preston, for appellants.

Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah and Franklin N. Smith, Jr., Idaho Falls, for respondents. Stephen K. Christiansen argued.

_____

W. JONES, Justice.

## I. NATURE OF THE CASE

Stanley and Catherine Jensen ("the Jensens"), as trustees of the Stanley and Catherine Jensen Family Living Trust, appeal the district court's decision granting Rocky Mountain Power's Motion for Summary Judgment. In granting summary judgment in the context of an eminent domain action, the district court held that the Jensens did not offer competent evidence

1

to establish that there was a genuine issue of material fact as to the just compensation for their property. The Jensens also appeal from the district court's denial of their Motion for Reconsideration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Rocky Mountain Power ("Utility") is a public utility authorized by the Idaho Public Utilities Commission to engage in the business of transmitting, distributing, and selling electric power. The Utility is vested with the power of eminent domain. It is in the process of creating a 345 kilovolt transmission line ("Transmission Line") constructed from the Populous Substation in Bannock County, Idaho, to the Ben Lomond Substation in Box Elder County, Utah. The Transmission Line will be used to provide electric power to the Utility's customers in Idaho, Utah, and Wyoming.

The Jensens, as Trustees of the Stanley and Catherine Jensen Family Living Trust, are record owners of a cattle ranch that lies within the corridor established by the Utility for the Transmission Line.[1] The ranch consists of 640 acres of land located northeast of Malad, Idaho. The Utility sought a perpetual easement and a right of way ("the Easement") for the Utility and its successors and assigns to locate, construct, reconstruct, operate, and maintain a 150 foot wide high-voltage overhead power line utility corridor through the eastern part of the Jensens' property. The Easement consists of 22.388 acres for the installation of 125' to 150' tall steel power poles on the eastern portion of the Jensens' property and 5.18 acres for the installation of the 30' wide access road outside the Transmission Line corridor, which is located on the northern portion of the Jensens' property. Because of the location of the property subject to the Easement ("subject property") and the narrow shape of the Jensens' property, the Jensens and the Utility dispute how much of the Jensens' property is cut-off or encumbered by the Easement.

On October 10, 2008, the Jensens entered into an Idaho Right of Occupancy Agreement ("Occupancy Agreement") with the Utility, waiving all defenses to the Utility's acquisition of the Easement, except the claim of just compensation.[2] The Occupancy Agreement was

---

[1] Stewart Jensen and Brian Pearson, the other named defendants in this action, disclaimed any interest in the Jensens' property by executing a "Quit-Claim Deed and Release," which was filed in the Oneida County Recorder's Office on July 14, 2009.

[2] The Occupancy Agreement states in pertinent part:

> This right of occupancy is granted for the purpose of allowing Rocky Mountain Power to initiate a power line construction projection . . . , pending final agreement as to the value of just compensation for the acquisition of the Property either by means of settlement between the parties, alternative informal

2

subsequently amended twice on March 19, 2009 and December 29, 2009 to provide for revised alignments of the subject property and to correct the legal description of the access road.

Upon execution of the Occupancy Agreement, the Jensens were paid $215,630[3] which would be deducted from any final determination of just compensation for the Easement. Under the terms of the Occupancy Agreement, if just compensation is determined to be less than $215,630, the Jensens are not required to return the difference. The Occupancy Agreement further states that if the parties are unable to reach an agreement for just compensation within 60 days of the Occupancy Agreement's effective date, which is the date signed by the property owners, then just compensation is to be determined by court proceedings. The Occupancy Agreement also states that the date signed by the owners "shall be the date of value for fair market valuation purposes in the context of . . . an eminent domain proceeding." Thus, pursuant to the terms of the Occupancy Agreement, October 10, 2008 is the date of value for fair market valuation purposes.

On December 4, 2008, the Jensens sent a letter ("the December 4th Letter") to Electrical Consultants, Inc., one of the Utility's consultants, responding to an inquiry from Tom Denison, who is employed by the Utility, inquiring as to what the Jensens would accept as just compensation for the Easement. The Jensens claimed that their estimate was "based upon the highest and best use of [their] property," which the Jensens separately assessed for each affected parcel. In the December 4th Letter, Stanley Jensen stated that they "would seriously consider"

proceedings as provided for in this Agreement, or condemnation proceedings. Property Owner grants to Rocky Mountain power the right of occupancy subject to the terms and conditions contained herein.

By executing this Agreement, Property Owner waives and abandons all defenses to Rocky Mountain Power's eventual acquisition of the Subject Property, except a claim for the payment of just compensation for the easement, which if the parties to this Agreement are unable [to] agree upon within 60 days of the effective date of this Agreement, will then necessarily be determined through court proceedings.

[3] The Occupancy Agreement states in relevant part:

It is understood and agreed that the sum of $215,630.00 (the most recent amount offered for the right of way, access easements and damages) will be paid to the Property Owner as consideration for granting this Right of Occupancy. The amount paid to the Property Owner under this Agreement shall be deducted from a final settlement (should said settlement be greater than the offer of $215,630.00 paid pursuant to this Agreement) between both parties, the award of non-binding arbitration, or the final judgment amount awarded in a condemnation action, should one be filed to acquire the Subject Property. If the $215,630.00 paid to Property Owner under this Agreement is greater than the amount of the final judgment awarded in a condemnation action, the Property Owner shall not be required to return the difference to Rocky Mountain Power. The monetary sum paid to Property Owner pursuant to this Agreement is for the purposes of this Agreement only, and shall not be admissible as evidence in any subsequent determination of value of the Subject Property.

3

$2,316,370 for a permanent easement. Stanley Jensen also provided the Utility with an alternative leasing option for the sum of $1,896,370.

On June 29, 2009, the Jensens submitted a document with the district court, which Stanley Jensen entitled: "Order for Discovery and Affidavit of Stanley K. Jensen." This unsworn document was completed and signed by Stanley Jensen in his own handwriting. This unsworn document does not qualify as an "affidavit" and is not admissible as evidence. For purposes of reference only, it shall hereinafter be referred to as the "June 29th Pseudo-Affidavit." It details the Jensens' concerns about the access road's gate, stating how it was left open on several occasions and is affecting the security of their property. It also detailed his concerns that the Utility had not paid him for cow feed for two seasons, as the Utility promised it would. The June 29th Pseudo-Affidavit also asserts that the Easement has affected the Jensens' business dealings with local banks, asserting: "The occupancy monies we received were taken by the banks and applied to Farm Debt. When the banks saw what this project was doing in damage to our property they said your farm value has dropped [sic] too much and we want the money." The June 29th Pseudo-Affidavit further reiterates the Jensens' concerns about potential liabilities stemming from the access road and their need for a new well for their cattle, which is estimated at $50,000, because the access road cuts their cattle off from a natural spring.

The parties were unable to reach an agreement for just compensation within the time specified, so the Utility filed its Complaint on January 9, 2009, seeking a decree of condemnation, an award of easement, and specific performance of the Occupancy Agreement. The Utility submitted two independent appraisals of the property on January 29, 2010. According to an affidavit submitted by MAI appraiser Lenard Owens, "the fair market value of the part taken plus damages as of September 10, 2008, is $162,000.00."[4] As set forth in the affidavit of MAI appraiser J. Phillip Cook, "the fair market value of the part taken plus damages as of January 12, 2009, is $82,000.00."[5]

---

[4] In reaching his appraisal figure, Owens utilized the sales comparison approach, which based the analysis on recent sales of comparable properties in the area. After establishing a range of $1,700 to $4,836, where the higher end of the range represented residential properties, Owens determined that the fair market value of the Jensens' property was $3,500 dollars an acre.

[5] Cook arrived at a range of $690 to $4,836 an acre. This range represented the sale of agricultural, residential, and recreational property in the area. Cook determined that the Jensens' property is worth somewhere in the middle of this range, or $2,750 an acre, for a total fair market value of $82,000, because it is currently used for agricultural purposes, but it has potential for residential investment. In reaching his appraisal, Cook also noted that the easement was for high tension power lines, which traditionally demands higher compensation.

4

Under the Scheduling Order, the Jensens had until January 29, 2010 to disclose any expert witnesses. The Jensens never provided any expert witness affidavits or appraisals for the district court's consideration. Instead, on March 9, 2010, the Jensens submitted a document, which was entitled "Defence [sic] Answering Brief to Plaintiff's Motion for Summary Judgment," ("Answering Brief") to the district court. Like the other documents that the Jensens provided, the Answering Brief was not presented to the district court as a proper affidavit. Instead, the Answering Brief was created by Stanley Jensen in his handwriting. The Answering Brief contended that the Jensens were entitled to the prevailing market price of their property and that Cook's and Owens's appraisals do not meet federal and state appraisal standards because the comparable properties cited in the appraisals do not front the I-15 Freeway. Furthermore, he contends that the appraisals do not account for their property's commercial and residential value. The Answering Brief also provided an offer of settlement. This time the Jensens' offer was for $3,191,295. The Answering Brief further provided a list of damages, including the costs associated with removing the access road and replacing it with a new road on the north side of their property, installing a 12 foot tall cattle guard and 3 steel gates at the entrance of the new road to owners' specifications, and installing drain pipes on the side of the access road to prevent erosion.

The Utility filed its Motion for Summary Judgment on January 29, 2010, contending that the Jensens have not identified any expert witnesses or laid a proper foundation for any probative evidence of just compensation. The Jensens asserted the December 4th Letter, the June 29th Pseudo-Affidavit, and the Answering Brief raised a genuine issue of material fact. On April 20, 2010, the district court granted the Utility's Motion for Summary Judgment, holding that the Jensens failed to offer competent evidence of valuation other than mere allegations, conclusory statements, or denials of the Utility's pleadings. The district court further held that the amount of just compensation is $162,000, which was previously paid to the Jensens in accord with the terms of the Occupancy Agreement. On May 11, 2010, the district court filed its Final Judgment of Condemnation and a Decree of Easement, granting a perpetual easement and right of way to the Utility. On May 25, 2010, the Jensens filed their Motion for Reconsideration, contending that if they had the assistance of counsel, relevant evidence and affidavits would have been properly presented to the district court. As a result, the district court would have held that there were genuine issues of fact regarding the value of the subject property. In support of their

5

Motion for Reconsideration, the Jensens submitted new evidence for the district court's consideration, including the affidavits of Larry Oja[6] and Jeffery Semrad,[7] two landowners who recently sold their properties, which are located near the Jensens' property, for residential development; the affidavits of Catherine and Stanley Jensen;[8] and a notarized letter written by realtor Lorenda Seamons,[9] who previously listed the Jensens' property. On July 6, 2010, after considering the evidence submitted by the Jensens in support of their Motion for Reconsideration, the district court held that the Jensens did not provide a basis for overturning its initial ruling. Thereafter, the Jensens filed their Notice of Appeal on August 16, 2010.

## III. ISSUES ON APPEAL

1. Whether the Jensens provided a genuine issue of material fact regarding the just compensation of the subject property?

2. Whether the district court abused its discretion in denying the Jensens' Motion for Reconsideration?

## IV. STANDARD OF REVIEW

"When this Court reviews a district court's grant of summary judgment, it uses the same standard properly as that employed by the district court originally ruling on the motion." *Lowder v. Minidoka Cnty. Joint Sch. Dist. No. 331*, 132 Idaho 834, 837, 979 P.2d 1192, 1195 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as

---

[6] The affidavit of Larry Oja, who owned property near the Jensens' property in Oneida County, which he contends is similar in both its character and use to the Jensens' property, indicates that he sold his property for $11,000 an acre.

[7] The affidavit of Jeffery Semrad, President of Semrad Bros. and Sons, Inc., contends that he sold property, which is located near the Jensens' property and is similar in both its character and use, for $8,468 an acre.

[8] Catherine and Stanley Jensen submitted affidavits, which state in relevant part that their property has potential commercial, residential, and agricultural value because it has significant Highway I-15 frontage, is "un-zoned," and overlooks Devil Creek Reservoir.

[9] The Jensens submitted a notarized letter written by Lorenda Seamons, a local realtor who has listed the Jensens' property in the past, contending that if the Jensens' property were subdivided into residential lots, the likely value of their property would be $8,000 to $10,000 an acre.

6

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." I.R.C.P. 56(e).

The denial of a motion for reconsideration is reviewed for abuse of discretion. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 560, 212 P.3d 982, 990 (2009).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *See Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008) (citing *State Ins. Fund v. Jarolimek*, 139 Idaho 137, 138–39, 75 P.3d 191, 192–93 (2003)).

## V. ANALYSIS

### A. The Jensens Did Not Establish a Genuine Issue of Material Fact Regarding the Just Compensation for the Subject Property

The Jensens argue that the district court erred in granting the Utility's Motion for Summary Judgment because the district court failed to properly consider the Jensens' position as to their property's commercial or residential value as described in the December 4th Letter, the June 29th Pseudo-Affidavit, and the Answering Brief.  The Jensens also argue that the district court failed to properly consider their separate damages claims, including the extent to which the Utility affected their dealings with local banks; limited their ability to fully utilize their land for grazing and agriculture; impeded the movement of their livestock, which required the construction of a $50,000 well; and created potential civil liabilities with the construction of the access road with its 6 foot tall embankments.

In an eminent domain case, just compensation must be paid to the landowner.  IDAHO CONST. art I, § 14.  The relevant provisions of I.C. § 7-711 that the district court was required to consider in determining just compensation are described as follows:

> The court . . . must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:
>
> 1. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consists of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed . . . .

2. If the property sought to be condemned constitutes only a part of a larger parcel: (a) the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff; and (b) the damages to any business qualifying under this subsection having more than five (5) years' standing which the taking of a portion of the property and the construction of the improvement in the manner proposed by the plaintiff may reasonably cause.

3. Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be specially and directly benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the damages assessed, under subsection 2. of this section, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value.

5. As far as practicable, compensation must be assessed for each source of damages separately.

6. If the property sought to be condemned is private real property actively devoted to agriculture, the damages which will accrue because of the costs, if any, of farming around electrical transmission line structure(s) for a transmission line with a capacity in excess of two hundred thirty (230) kilovolts. If the property sought to be condemned has been the subject of a previous condemnation proceeding or proceedings for electrical transmission line structure(s) and at the time of condemnation the field holds other electrical transmission line structure(s), such evidence of costs referred to above may also include the cumulative effects, if any, of conducting farming operations around other electrical transmission line structure(s) in the same field, whether such structure(s) are of the condemner or not.

The burden of proving just compensation is borne by the landowner. *State ex rel. Rich v. McGill*, 79 Idaho 467, 470, 321 P.2d 595, 596 (1958). An award of just compensation must be supported by the evidence. *State ex rel. Ohman v. Ivan H. Talbot Family Trust*, 120 Idaho 825, 827, 820 P.2d 695, 697 (1991). Just compensation is based on fair market value, which is the price for which the property could be sold by an owner willing to sell to a willing purchaser on the date of the taking. *Ada Cnty. Highway Dist. v. Magwire*, 104 Idaho 656, 658–59, 662 P.2d 237, 239–40 (1983). Evidence of listing price or asking price is not admissible. *Farr W. Inv. v. Topaz Mktg.*, 148 Idaho 272, 276, 220 P.3d 1091, 1095 (2009). This Court "will not set aside an award that is within the range of estimates given by the various witnesses at trial." *Ivan H. Talbot Family Trust*, 120 Idaho at 827, 820 P.2d at 697.

8

The only evidence of the fair market value of the subject property presented under I.C. § 7-711 consisted of the affidavits of the Utility's independent appraisers. The Jensens did not properly submit affidavit testimony or provide any other admissible evidence tending to establish the fair market value of the Easement. *See* I.R.C.P. 56(e). The price that the Jensens' relatives are willing to pay for the Jensens' property and the price for which the Jensens previously listed their property with a real estate company are not admissible. *See Farr W. Inv.*, 148 Idaho at 276, 220 P.3d at 1095. Instead of providing relevant facts in the form of affidavit testimony or other admissible evidence to oppose the Utility's Motion for Summary Judgment, the Jensens provided only conclusory assertions and denials of the Utility's pleadings, which are inappropriate under I.R.C.P. 56(e). *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005) (the non-moving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment). Furthermore, the fact that there has been residential development near the Jensens' property does not per se establish that it is reasonably probable that the subject property is adapted to residential or commercial development. *See Ada Cnty. Highway Dist.*, 104 Idaho at 658–660, 662 P.2d at 239–41.

The Jensens' business damages claims fall under I.C. § 7-711(2)(b). *See City of McCall v. Seubert*, 142 Idaho 580, 130 P.3d 1118 (2006). The Jensens were required to submit a written business damage claim along with copies of the Jensens' business records that substantiate a good faith offer to settle the business damage claims within 90 days after service of the summons and complaint for condemnation. I.C. § 7-711(2)(b)(i), (iii). Absent a showing of a good faith justification for the Jensens' failure to submit their business damages claim, the district court was required to strike the claim from the condemnation proceeding. I.C. § 7-711(2)(b)(ii), (v). The Jensens failed to comply with the terms of I.C. § 7-711. Furthermore, they do not provide a good faith justification for their failure to comply with the statute, besides asserting, without elaboration, a good faith reliance on an alleged promise made by the Utility to pay for all their damages. The Jensens claim for severance damages and their reliance on I.C. § 7-711(6)[10] are also inapposite for the reasons described in the previous paragraph. Thus, these claims have already been addressed.

---

[10] The relevant provision of I.C. § 7-711(6) asserts:

> If the property sought to be condemned is private real property actively devoted to agriculture, the damages which will accrue because of the costs, if any, of farming around electrical transmission line structure(s) for a transmission line with a capacity in excess of two hundred thirty (230) kilovolts . . . .

9

The Jensens further assert that since they were pro se litigants and were unfamiliar with the Idaho Rules of Civil Procedure, I.C. § 7-711, and other applicable laws, this Court should afford them special consideration and their claims should not be subject to summary judgment. "Pro se civil litigants are not accorded special latitude merely because they chose to proceed through litigation without the assistance of an attorney." *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009). They "are held to the same standards and rules as those represented by an attorney." *Suitts v. Nix*, 141 Idaho 706, 709, 117 P.3d 120, 123 (2005). Even though the district court and the Utility informed the Jensens on numerous occasions to seek the advice of counsel, the Jensens proceeded without counsel at their own peril. Many of the problems encountered by the Jensens were attributable to the lack of counsel, but even if a different result might have occurred with the use of counsel, this Court cannot consider that matter.

The Jensens also assert that the district court abused its discretion in considering Owens's and Cook's appraisals because they did not address the sales of comparable properties or consider the value of the subject property if it were sold as commercial or residential lots under I.C. § 7-711. Appraisals are a typical means of establishing fair market value in condemnation proceedings. *See City of McCall*, 142 Idaho at 585–86, 130 P.3d at 1123–24. The Jensens do not call into question the propriety of considering Owens's and Cook's appraisals. They only question the methodologies employed presumably because the appraisers did not reach a conclusion satisfactory to the Jensens. The appraisals assessed the fair market value of the subject property by ascertaining the value of the Jensens' property before and after the taking, while still considering the property's highest and best commercial, residential, and agricultural use. The appraisers engaged in an in-depth analysis of comparable properties or easements sold in the area, considering the location of the Jensens' property, the demographics of the community, the potential for residential and commercial development in the area, among others. Furthermore, Owens's appraisal, in particular, considered the fair market value as it relates to the Jensens' whole property. The range set by the appraisals is from $82,000 to $162,000. The Jensens provided no evidence to counter the accuracy of this range. Furthermore, the Jensens did not challenge the date of value for fair market value purposes cited in the appraisals as

10

contrary to the Occupancy Agreement.[11] They only provided mere allegations, denials of the Utility's pleadings, and conclusory statements. The district court awarded the Jensens $215,630 as per the terms of the Occupancy Agreement, which represents a figure well in excess of $162,000. There is absolutely no competent evidence that the fair market value exceeded the $215,630 paid by the Utility. Thus, the district court did not err when it held that the Jensens have already been paid the fair market value of their property.

The Jensens failed to establish a genuine issue of material fact as to the fair market value of the subject property. Thus, the district court did not err in awarding the Easement to the Utility. The Jensens have already been paid the full amount of just compensation under the terms of the Occupancy Agreement.

**B.     The District Court Did Not Abuse Its Discretion When It Denied the Jensens' Motion for Reconsideration**

The Jensens contend that the new evidence that they provided in support of their Motion for Reconsideration raised genuine issues of material fact regarding the potential agricultural, residential, and commercial fair market value of their property. The Jensens also contend that the district court erred in disregarding their separate damages claims, which now include their inability to farm parts of their property, resulting in an annual loss of $49,300; the additional annual costs of $51,475 to farm their property due to the access road; the potential liabilities created by the access road; the installation of a $50,000 well because the access road prevents their cattle from reaching a natural spring; and the costs incurred because of soil and water erosion caused by the access road. The Jensens further contend that because there was an $80,000 difference between Owens's and Cook's appraisals, this was enough, in itself, to establish a genuine issue of material fact.

Rule 11(a)(2)(B) of the Idaho Rules of Civil Procedure states in relevant part: "A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment." "The decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court." *Jordan v. Beeks*, 135 Idaho 586, 592, 21 P.3d 908, 914 (2001). When considering a motion for reconsideration under I.R.C.P. 11(a)(2), the district court

---

[11] The Occupancy Agreement states that the date of value for fair market value purposes is October, 10, 2008. Owens's and Cook's appraisals assert that the date of value for fair market value purposes is September 10, 2008 and January 12, 2009, respectively. Because neither party challenged these discrepancies, this issue is waived.

should take into account any new facts or information presented by the moving party that bear on the correctness of the district court's interlocutory order. *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *See Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008) (citing *State Ins. Fund v. Jarolimek*, 139 Idaho 137, 138–39, 75 P.3d 191, 192–93 (2003)).

The district court expressly recognized the discretionary nature of its decision. Also, the district court acted consistently with the applicable legal standard and exercised reason when it denied the motion on the grounds that the Jensens did not provide new facts to support its claim and failed to direct the court to evidence in the record that would create a genuine issue of material fact. *See Blackmore v. Re/Max Tri-Cities, L.L.C.*, 149 Idaho 558, 237 P.3d 655 (2010). The fact that the appraisers arrived at different fair market value determinations only reflects the differences in the appraisal methodologies employed. The appraisals set the required range pursuant to I.C. § 7-711. The Jensens provided no new evidence establishing a genuine issue of material fact with regard to the accuracy of this range. Neither did they present any evidence of fair market value in excess of the $215,630 that they have already been paid. Thus, the district court reached its decision by the exercise of reason.

## VI. CONCLUSION

The Jensens failed to establish a genuine issue of material fact as to the fair market value of the subject property. The Jensens also failed to establish that the district court abused its discretion when it denied their Motion for Reconsideration. Therefore, we affirm the judgment of the district court. Costs are awarded to the Utility. Neither party requested attorney's fees.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.