**Wanda P. HINES, Plaintiff–Appellee,**

v.

**BRANDON STEEL DECKS, INC., Defendant–Appellant.**

No. 88–8618.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1989.

Pat Huddleston, II, McKenzie & McPhail, B. Morris Martin, Scott M. Klauber, Atlanta, Ga., for defendant-appellant.

Samuel W. Oates, Jr., Columbus, Ga., for plaintiff-appellee.

Before CLARK and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

This is a wrongful death action brought in federal court on the basis of diversity jurisdiction. On appeal, we address the propriety of the district court's refusal, during trial, to admit into evidence the opinions and conclusions contained in an OSHA investigative report. In light of the Supreme Court's intervening decision of *Beech Aircraft v. Rainey*, —— U.S. ——, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), we remand this case to the district court for reconsideration.

## BACKGROUND

Prior to January 1987, Brandon Steel Decks, Inc. (Brandon Steel), was a roof decking contractor, headquartered in Brandon, Florida. As a decking contractor, Brandon Steel installed metal roof decking on buildings. On January 8, 1987, Emory Singletary, son of the owner of the company, arrived in Cordele, Georgia, along with Richard Burrows and Bill Wood, regular employees of Brandon Steel, to begin work on a decking contract at the Southeastern Frozen Foods plant then under construction in Cordele. Conn–Delmar Steel Erectors, Inc., (Conn–Delmar), contracted to do the structural steel work on the building and was already present on the job site when Mr. Singletary and his employees arrived.

Upon arriving in Cordele, Mr. Singletary found that Conn–Delmar was running behind schedule and had completed relatively little of the structural steel work. Consequently, there was very little decking work for Brandon Steel to do. Nonetheless, the Brandon Steel employees proceeded to complete the decking work on a relatively low portion of the building. Having completed all of the decking work that could be done given the lack of a completed structural frame, Singletary returned to Florida to await completion of the structural steel. Upon learning of Singletary's plans to return to Florida, Bill Meredith, president of Conn–Delmar, agreed with Singletary that Bill Wood and Richard Burrows would stay on the site for a few days as employees of

Conn–Delmar to assist with the completion of the structural frame of the building. Wood and Burrows then worked for Conn–Delmar on January 10 and 11, 1987, and were paid in cash by Bill Meredith for the work done on those days.

Conn–Delmar completed a substantial portion of the structural frame of the building by January 11, 1987, and on the morning of January 12, 1987, several men attempted to land bundles of steel roof decking on the top of the frame of the structural steel. The men involved in the landing of the decking on that morning were Bill Wood, Richard Burrows, Quinten Holcomb (Conn–Delmar's foreman), Robert Griffin and Pete Hines (Conn–Delmar employees). Although Conn–Delmar's equipment was used, the work being done was under Brandon Steel's contract. Thus, a dispute exists over which company was in charge of this work and which company employed Richard Burrows and Bill Wood on that particular morning. Other disputes involve which individuals were directing the crane and who made the decision to land the decking in a certain area.

In any event, the first bundle of decking that was landed on the superstructure that morning was placed directly in the center of a span of bar joists. This placement of the decking was admittedly dangerous; the proper place to land decking is at the intersection of a bar joist and a girder. When the crane operator landed the second bundle on top of the first bundle, the superstructure collapsed and both Mr. Hines and Mr. Burrows fell to their deaths. The next day, an investigator from the Occupational Safety and Health Administration, (OSHA), arrived on the scene of the accident, interviewed several people and prepared an official report.

On July 15, 1987, Wanda P. Hines commenced this action by filing a complaint against Brandon Steel in the United States District Court for the Middle District of Georgia. Brandon Steel timely answered, and the case proceeded to trial on July 11, 1988. During trial, Brandon Steel tendered into evidence the report prepared by the OSHA inspector. The report stated, among other things, that Brandon Steel did not employ any of the individuals allegedly negligent in this case, and exercised no control over the operations which resulted in the death of plaintiff's decedent. Plaintiff's counsel objected on the grounds that the conclusions and opinions in the report were not admissible under Federal Rule of Evidence 803(8)(C).[1]

The district court applied *Rainey v. Beech Aircraft Corp.*, 827 F.2d 1498 (11th Cir.1987) (*in banc*) to resolve the issue. Under the Eleventh Circuit *Rainey* decision, opinions and conclusions contained in public reports were not admissible under Rule 803(8)(C). Thus, the district court held that only so much of the OSHA report as dealt with specific findings of fact would be admitted and that all conclusions and opinions would be excluded. Accordingly, the parties struck out the following "opinions" and "conclusions" recounted in the OSHA report:

1. Mr. Richard Burrows was a Conn–Delmar employee "loaned" from Brandon Steel;

2. Conn–Delmar was the employer of both (deceased) men at the time of the accident;

3. Conn–Delmar's foreman controlled the work;

4. It was Conn–Delmar's idea that the decking be placed on the joists that morning;

5. No evidence exists that Brandon Steel had control over the work being done at the time of the accident;

---

1. Rule 803(8)(C) provides:
    **Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial**
    The following are not excluded by the hearsay rule, even though the declarant is available as a witness;
    . . . .
    **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

6. At no time did any Brandon Steel employees have control over the operation.

The rest of the report was admitted into evidence and published to the jury without emphasis or comment from either party. After closing arguments and instructions, the jury returned a verdict in favor of the plaintiff in the amount of $620,000.00. The district court entered judgment in accordance with the jury's verdict on July 21, 1987. Brandon Steel timely filed this appeal. While the appeal was pending, the Supreme Court unanimously reversed the Eleventh Circuit *Rainey* decision. *Beech Aircraft Corp. v. Rainey*, 109 S.Ct. 439. Specifically, the Supreme Court held that "factually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)(C)." *Id.* at 446.

## DISCUSSION

■ Rule 803(8)(C) allows into evidence public reports that (1) set forth factual findings (2) made pursuant to authority granted by law (3) that the judge finds trustworthy. Fed.R.Evid. 803(8)(C). In addition, public reports, otherwise admissible under Rule 803(8)(C), may nonetheless be excluded in whole or in part if the trial court finds that they are either irrelevant or more prejudicial than probative. *See Rainey*, 109 S.Ct. at 448–49; *United States v. MacDonald*, 688 F.2d 224, 230 (4th Cir. 1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). The district court has broad discretion to admit or exclude evidence during trial and the decision to exclude certain evidence will not be reversed absent a clear showing of abuse of that discretion. *Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1358 (11th Cir.1986) (*in banc*).

■ In this case, however, the district court did not exercise discretion in excluding certain portions of the OSHA report. Rather, the court understandably relied on the Eleventh Circuit *in banc Rainey* opinion and held that the opinions and conclusions contained in the report were *per se* inadmissible under Rule 803(8)(C). This ra-

tionale has since been explicitly rejected by the Supreme Court. Under these circumstances, we have no choice but to remand the case to the district court for reconsideration of the report's admissibility in light of the Supreme Court's recent reversal of *Rainey*.

In order to aid the district court on remand in determining the admissibility, either in whole or in part, of the OSHA report, we discuss some factors that the district court may wish to consider.

### A. LEGAL VERSUS FACTUAL CONCLUSIONS

■ In footnote thirteen of the Supreme Court *Rainey* opinion, the Court cautioned that it expressed no view as to whether a legal conclusion as opposed to a factual conclusion was admissible under Rule 803(8)(C):

> We emphasize that the issue in this case is whether Rule 803(8)(C) recognizes any difference between statements of "fact" and "opinion." There is no question in this case of any distinction between "fact" and "law." We thus express no opinion on whether legal conclusions contained in an official report are admissible as "findings of fact" under Rule 803(8)(C).

*Rainey*, 109 S.Ct. at 450 n. 13. In his concurring opinion in the Eleventh Circuit *Rainey* case, Judge Tjoflat suggested that, indeed, legal conclusions contained in reports would not fall within Rule 803(8)(C) as a "finding." "The common meaning of finding ... comports with investigative conclusions (i.e., the results derived from the examination of facts), but not with idle speculation or legal conclusions: 'a finding does not include legal conclusions that may have been reached by an investigator and is necessarily something more than a mere recitation of evidence....'" *Rainey*, 827 F.2d at 1510 (citation omitted). We agree that Rule 803(8)(C) does not provide for the admissibility of the legal conclusions contained within an otherwise admissible public report. Thus, one approach that the district court might take is to determine whether any of the excluded portions of

the OSHA report contain legal conclusions that fall outside the purview of Rule 803(8)(C). Legal conclusions are inadmissible because the jury would have no way of knowing whether the preparer of the report was cognizant of the requirements underlying the legal conclusion and, if not, whether the preparer might have a higher or lower standard than the law requires.

We caution, however, that the amorphous line between "factual" and "legal" conclusions may obscure a practical analysis under this rubric. While a legal conclusion encompasses "the idea that the State will habitually sanction and enforce a legal relation of a specific content," a factual conclusion is one of a number of "contingencies on which the State predicates this relation." Isaacs, *Law and the Facts*, 22 Colum.L.Rev. 1 (1922). Another way of looking at this inquiry is: Would the conclusion, if made by the district court, be subject to the clearly erroneous standard of review on appeal? If so, then the conclusion is factual; if not, then the conclusion is legal. In addition, for those conclusions which are a mixed question of law and fact, a potential framework for analysis would be to ask whether the investigator made a finding of the "ultimate facts" underlying the legal conclusion.

## B. TRUSTWORTHINESS

We further note that most cases analyzing the admissibility of reports under 803(8)(C) do not frame the issue in terms of factual versus legal conclusions. Instead, almost all of the courts frame the inquiry in terms of trustworthiness. Comment, *The Trustworthiness of Government Evaluation Reports under Federal Rule of Evidence 803(8)(C)*, 96 Harv.L.Rev. 492, 497–98 (1982). The Advisory Comments to the rule set forth several considerations to aid in determining the trustworthiness of a public report: the timeliness of the investigation; the skill and experience of the investigator; whether the investigator held any sort of a hearing; and the investigator's impartiality. These considerations are not meant to be exhaustive. Advisory

Committee's Notes on Fed.R.Evid. 803(8), 28 U.S.C.App., p. 725.

■■ Under these factors, the district court might consider whether the OSHA investigator's "expertise" includes that necessary to decide questions of agency and whether this factor goes to the admissibility of the report or merely to its weight. *Cf. Fraley v. Rockwell International Corp.*, 470 F.Supp. 1264, 1267 (S.D. Ohio 1979) (document properly excluded where prepared by inexperienced investigator in highly complex field of investigation); *United States v. School District of Ferndale*, 577 F.2d 1339, 1354–55 (6th Cir.1978) (fact that HEW examiner not an expert goes to weight and not to admissibility; therefore examiner's findings were erroneously excluded as untrustworthy). Furthermore, the district court might consider how the fact that no hearing was held in making the report affects its trustworthiness. *See Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 821–22 (10th Cir.1981) (Civil Rights Commission's findings on discrimination properly excluded where ex parte investigation lacked formal procedures such as opportunity to cross-examine witnesses); *McKinnon v. Skil Corp.*, 638 F.2d 270, 278 (1st Cir.1981) (Consumer Product Safety Commission Reports properly excluded as untrustworthy where they contained double hearsay on issues of defect, causation and negligent design); *Miller v. Caterpillar Tractor Company*, 697 F.2d 141, 144 (6th Cir.1983) (report excluded because relied upon hearsay statements of witnesses interviewed by investigator).

■ In addition, the OSHA investigator stands in a unique position because federal law generally prohibits him or her from testifying in private civil litigation. *See* 29 C.F.R. § 2.20 *et seq.* While the inability to cross-examine the investigator cannot *per se* invalidate the report since Rule 803(8) does not depend on the availability of the declarant, it is nonetheless a proper factor to take into consideration when deciding trustworthiness. *See Wilson v. Attaway*, 757 F.2d 1227, 1245 (11th Cir.1985) (report excluded for a variety of reasons including failure to afford possibility of cross-exami-

nation); *see generally The Trustworthiness of Government Evaluation Reports*, 96 Harv.L.Rev. at 499.

### C. CUMULATIVE, IRRELEVANT OR PREJUDICIAL

■ Finally, the district court might consider whether the report should be excluded under any of the other Rules of Evidence. For instance, if sufficient evidence existed on the question of agency, then the report may be cumulative and excludable under Fed.R.Evid. 403. *See Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309–10 (8th Cir.), *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984). The report might also be excluded as irrelevant or as more prejudicial than probative. Fed.R.Evid. 402 & 403; *see MacDonald*, 688 F.2d at 230 (although otherwise admissible under Rule 803(8)(C), report properly excluded where it would not help jury with ultimate issue of case and would be confusing).

### CONCLUSION

The foregoing considerations are merely suggestive; we leave the initial determination of the admissibility of the OSHA report to the sound discretion of the district court. The case is therefore REMANDED to the district court to consider the admissibility of the OSHA report in light of *Beech Aircraft v. Rainey*, — U.S. —, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), and such other factors as the court deems appropriate.

REMANDED.