# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 40502

WILLIAM P. TEURLINGS,

    Plaintiff-Appellant,

v.

MALLORY E. LARSON nka MALLORY E.
MARTINEZ,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, September 2013
Term

2014 Opinion No. 11

Filed: February 10, 2014

Stephen Kenyon, Clerk

Appeal from the District Court of the Second Judicial District of the State of
Idaho, Clearwater County. Hon. Carl B. Kerrick, District Judge.

The judgment of the district court dismissing the action is <u>vacated</u>. The district
court's denial of the motion to strike is <u>affirmed</u> and the matter is <u>remanded</u> to the
district court for further proceedings consistent with this opinion.

Smith & Cannon PLLC, Lewiston, for appellant. Ned A. Cannon argued.

Clements, Brown & McNichols, P.A., Lewiston, for respondent. Sonyalee R.
Nutsch argued.

_____

HORTON, Justice.

This appeal arises from an action filed against Mallory Martinez[1], a National Guard
member, by William Teurlings. Teurlings alleged he suffered personal injury and economic
damage resulting from a vehicle collision caused by Martinez's negligence. Martinez moved for
summary judgment asserting immunity under I.C. § 6-904(4), which provides immunity to
National Guard members for claims arising out of certain federal training or duty. The district
court granted the motion after concluding Martinez fell within the scope of the statutory
immunity. Teurlings appeals, arguing that Martinez is not immune under I.C. § 6-904(4) because
she was not "engaged in training or duty" and she was not acting within the course of her
employment at the time of the collision. Teurlings also appeals the district court's denial of a

---

[1] At the time of the accident, Defendant/Respondent was named Mallory E. Larson; she has since married and will
be referred to throughout by her married name of Martinez.

motion to strike portions of affidavits offered in support of Martinez's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2007, at about 12:43 p.m., Martinez was involved in a traffic accident with Teurlings. At the time, Martinez was a member of the Idaho National Guard, 145th HHC Support Battalion, headquartered in Lewiston. Martinez was required to attend instructional drills one weekend each month. Section Sergeant Tony Rice was her immediate superior. That weekend, National Guard members were considered on duty from 12:00 a.m. January 6, 2007 to 11:59 p.m. on January 7, 2007. At the time of the accident, Martinez was returning from Lewiston to her home in Nampa after the National Guard members were released early from training due to an incoming snow storm. For the weekend of January 6-7, Sergeant Rice had requested that Martinez provide transportation to and from Lewiston for fellow Guard member, Danielle Poe, who lived in the Boise area. Poe was in the car with Martinez during the accident. Martinez was not compensated for her travel expenses but a Report of Investigation completed after the collision found Martinez was in the "line of duty" at the time of the accident, and consequently the National Guard paid her medical expenses.

In 2009, Teurlings brought a state law negligence claim against Martinez. Martinez raised the affirmative defense of immunity under the Idaho Tort Claims Act (ITCA), I.C. §§ 6-901 to 929, specifically, I.C. § 6-904(4). Martinez later moved for summary judgment seeking dismissal of Teurlings' claims based on National Guard immunity under I.C. § 6-904(4), supported by affidavits from Sergeant Rice and Martinez. Teurlings moved to strike portions of the affidavits of Martinez and Sergeant Rice arguing they contained inadmissible legal conclusions that Martinez was "on duty."

The district court denied Teurlings' motion to strike, explaining the statements of Martinez and Sergeant Rice were not legal conclusions but facts about which they had personal knowledge. The district court then granted Martinez's motion for summary judgment based on I.C. § 6-904(4). The district court determined Martinez was "engaged in training or duty" because she was on duty for training under 32 U.S.C. § 502 and complying with the orders of a superior at the time of the accident. In making this determination, the district court relied on 38 U.S.C. § 101(22), which is the definition section for veterans benefits and defines "active duty for training" to include travel to and from such training. The district court also held that in the

alternative, summary judgment was appropriate because Martinez was acting within the course and scope of her employment at the time of the accident based on the special errand exception to the coming and going rule. The district court entered a final judgment dismissing Teurlings' cause of action. Teurlings filed a motion to reconsider and a motion to alter or amend the judgment along with a supplemental affidavit of Sergeant Rice in support of his motions. The district court denied both motions and Teurlings timely appealed.

## II. STANDARD OF REVIEW

This Court reviews appeals from a grant of summary judgment using the same standard as is used by the district court ruling on the motion. *Rees v. State, Dep't of Health and Welfare*, 143 Idaho 10, 14, 137 P.3d 397, 401 (2006). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When applying this standard, this Court liberally construes the facts and draws all reasonable inferences in favor of the nonmoving party. *Rees*, 143 Idaho at 14, 137 P.3d at 401. Only a "slight doubt as to the facts is not sufficient to create a genuine issue of material fact," but if "reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied." *Finholt v. Cresto*, 143 Idaho 894, 896–97, 155 P.3d 695, 697–98 (2007). On appeal from summary judgment, this Court exercises "free review over interpreting a statute's meaning and applying the facts to the law." *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 930, 277 P.3d 374, 377 (2012) (quoting *VFP VC v. Dakota Co.*, 141 Idaho 326, 331, 109 P.3d 714, 719 (2005)).

This Court applies an abuse of discretion standard when reviewing a district court's determination of the admissibility of affidavits offered to support or oppose a motion for summary judgment. *Fragnella v. Petrovich*, 153 Idaho 266, 273, 281 P.3d 103, 110 (2012). A district court does not abuse its discretion "if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *Id.* (quoting *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008)).

## III. ANALYSIS

The district court granted summary judgment holding Martinez was immune from suit pursuant to I.C. § 6-904(4). On appeal, Teurlings argues that there are genuine issues of material

fact as to whether Martinez was engaged in training or duty at the time of the accident and that Martinez was not acting within the course and scope of her employment. Teurlings also argues the district court erred in denying his motion to strike portions of the affidavits offered by Martinez because they contained legal conclusions.

We reverse the district court's grant of summary judgment but affirm the court's decision denying the motion to strike. Specifically, we hold the scope of immunity granted by I.C. § 6-904(4) is coextensive with the federal government's acceptance of responsibility for the negligence of National Guard members under the Federal Tort Claims Act (FTCA) and is to be analyzed uniformly with it. In addition, the district court's application of the coming and going rule to its analysis of course and scope of employment under I.C. § 6-904 was improper. The requirement that employees be acting within the "course and scope of their employment" in I.C. § 6-904 is to be analyzed under Idaho's law of respondeat superior. This Court declines to extend the workers' compensation coming and going rule and its exceptions to third-party negligence actions. We address these issues in turn.

## A. Idaho Code § 6-904(4) provides immunity for National Guard members when they are considered federal employees and the scope of "engaged in training or duty" is coextensive with the interpretation of this phrase within the FTCA.

Idaho Code § 6-904 states in relevant part:

A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
….
4. Arises out of the activities of the Idaho national guard when engaged in training or duty under sections 316, 502, 503, 504, 505 or 709, title 32, United States Code.

I.C. § 6-904(4). Idaho Code § 6-904 is part of the ITCA which generally "abrogates the doctrine of sovereign immunity" but preserves immunity "in certain specific situations." *Lawton v. City of Pocatello*, 126 Idaho 454, 458, 886 P.2d 330, 334 (1994). Idaho Code § 6-904 is an instance where immunity is preserved. This Court has recently reiterated that the ITCA,

[W]as enacted to provide much needed relief to those suffering injury from the negligence of government employees. To accomplish that purpose, the ITCA is to be construed liberally and liability is the rule and immunity is the exception. Further, we have held that the expressly stated exceptions must be closely construed. Thus, we construe the statute to favor liability and to limit exceptions.

4

*Grabicki v. City of Lewiston*, 154 Idaho 686, 691–92, 302 P.3d 26, 31–32 (2013) (internal citations and quotations omitted).

To be entitled to immunity, I.C. § 6-904(4) dictates that the National Guard member must be "engaged in training or duty" under specified sections of Title 32 of the United States Code. These sections outline federal training requirements and methods for the National Guard. It is not in dispute that on the day of the collision, Martinez was traveling from training required by 32 U.S.C. § 502(a). Section 502 provides in pertinent part:

> [E]ach company, battery, squadron, and detachment of the National Guard, unless excused by the Secretary concerned, shall – (1) assemble for drill and instruction, including indoor target practice, at least 48 times each year; and (2) participate in training at encampments, maneuvers, outdoor target practice, or other exercises, at least 15 days each year.

32 U.S.C. § 502(a).

As I.C. § 6-904 and 32 U.S.C. § 502 illustrate, the state and federal government share authority over the National Guard, making National Guard members' status as employees of the state rather unique. Except when federalized, National Guard soldiers are under the control of the state government and considered employees of the state. *See United States v. Hawaii*, 832 F.2d 1116, 1119 (9th Cir. 1987). Nevertheless, under 32 U.S.C. § 502, the federal government has exercised its authority to direct the frequency of participation in drills and field training. Since 1981, the federal government has assumed responsibility for claims against National Guard members in these instances under the FTCA. *See* 28 U.S.C. §§ 1346, 2671. Under the FTCA, the federal government is liable and has assumed responsibility:

> [F]or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). A federal "employee of the Government" includes "members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32." 28 U.S.C. § 2671. Essentially, the federal government has accepted liability "for acts or omissions of National Guard personnel which occur during federal training activities" because during that time the National Guard members are considered federal employees. *Hawaii*, 832 F.2d at 1118 (citing P.L. No. 97-124, § 1, 95 Stat. 1666 (1981) (amending 28 U.S.C. § 2671)).

Importantly, Idaho has not waived its sovereign immunity for the negligent acts of its National Guard employees committed when the members are considered federal employees under the FTCA. Specifically, I.C. § 6-904(4) disclaims responsibility for claims of negligence against members of the National Guard that arise "out of the activities of the Idaho national guard when engaged in training or duty under sections 316, 502, 503, 504, 505, or 709, title 32, United States Code." Thus, Idaho retains immunity from liability for the negligence of National Guard members when the federal government has accepted liability under the FTCA. *Compare* 28 U.S.C. § 2671, *with* I.C. § 6-904(4).

This Court will look to federal law when federal statutes are contained within Idaho's own statute and when federal and Idaho law mirror each other. *See, e.g., International Ass'n of Firefighters, Local No. 672 v. City of Boise City*, 136 Idaho 162, 170, 30 P.3d 940, 948 (2001) (when Idaho law mirrors federal law it should be interpreted consistently with federal law). Here, I.C. § 6-904(4) provides immunity for National Guard members' negligence under the ITCA which mirrors the federal acceptance of responsibility under the FTCA. The legislative intent is manifest: immunity is granted under the ITCA when the federal government has accepted responsibility for the negligence of National Guard members under the FTCA. Accordingly, we will analyze whether a National Guard member is "engaged in training or duty" under I.C. § 6-904(4) in accordance with federal case law addressing whether a party may recover for negligence of a National Guard member under the FTCA.

**B. Summary judgment was improper as issues of material fact exist regarding whether Martinez was "engaged in training or duty" under I.C. § 6-904(4).**

The district court held that there were no issues of material fact as to whether Martinez was on duty at the time of the collision, acting pursuant to an order, and thus, she was entitled to immunity under I.C. § 6-904(4). Teurlings argues that National Guard members are not "engaged in training or duty" under I.C. § 6-904(4) when traveling to and from training and that issues of fact remain regarding whether Martinez was engaged in a duty at the time of her negligence. Martinez contends that there is no dispute that by being on duty for the entire weekend and acting pursuant to an order from a superior she falls within the immunity granted by I.C. § 6-904(4). Because the district court did not properly determine what constitutes "engaged in training or duty" and Teurlings has identified sufficient facts as to demonstrate that summary judgment was in error, we reverse the grant of summary judgment.

First, we observe that weekend training under 32 U.S.C. § 502 is considered "inactive duty training." *See Rogers v. City of San Antonio*, 392 F.3d 758, 771 (5th Cir. 2004). To make the determination that Martinez was "engaged in training or duty" under I.C § 6-904(4), the district court relied on 38 U.S.C. § 101(22) which dictates that "active duty for training" includes "authorized travel to or from such duty." It is unclear how the district court came to apply this statute as it is the definition section for Title 38, relating to veteran's benefits, and the term "activity duty for training" is not used within Title 32 and not at issue in this case. Further, 38 U.S.C. § 101 also defines "inactive duty training" which includes training under § 502 but does not include travel to and from such training. *See* 38 U.S.C. § 101(23). As Martinez was not engaged in "active duty for training" but was participating in "inactive duty training," the district court erred in relying on title 38 U.S.C. § 101(22) to determine that Martinez was engaged in duty or training when returning from Lewiston.

Under the FTCA, often the question of whether someone is a federal employee is a non-issue because members of the Army and Air Force, unlike the National Guard, are under the *exclusive* control of the federal government and are thus, federal employees at all times while employed. *See, e.g., Hawaii*, 832 F.2d at 1119. Yet, it is apparent that National Guard members are "considered engaged in training or duty" when actively participating in federal training exercises or operating a military vehicle. *See, e.g., Mortise v. United States*, 102 F.3d 693, 694, (2nd Cir. 1996) (acknowledging National Guard member is a federal employee while engaged in overnight field training exercise); *Smith v. Swarthout*, 491 N.W.2d 590 (Mich. Ct. App. 1992) (finding National Guard member is federal employee when driving tanker truck owned by federal government during training); *Willis v. Skaff*, 414 S.E.2d 450 (W. Va. 1992) (member considered a federal employee when driving National Guard vehicle during training exercise). Courts have noted with caution, however, that the National Guard's determination that a member was injured while in the "line of duty" for purposes of medical benefits is separate and distinct from any determination regarding the government's liability for injuries to third parties under the FTCA. *See Walsh v. United States*, 31 F.3d 696, 699 (8th Cir. 1994).

In *Murray ex rel. Murray v. United States*, Lynn Murray sought relief under the FTCA after she was injured in a car accident while riding with Baker. 258 F. Supp. 2d 1006, 1007 (D. Minn. 2003). Baker, a member of the National Guard, was traveling to her duty station and transporting National Guard promotional materials in her own personal vehicle at the time of the

accident. *Id.* The court determined that Baker was not "engaged in training or duty" and thus, not a federal employee. *Id.* at 1011. The court reasoned federal liability attached *during* federal training exercises, such as overnight field drills, not while traveling before or after training. *Id.* at 1010. The court noted that "inactive duty training extends from the time of the first muster until the end of the scheduled inactive duty training for the day and does not include travel to and from home and headquarters." *Id.* at 1011 (citing H.R. Rep. No. 97-384, at 5 (1981)).

Murray also argued that Baker was acting pursuant to a duty at the time of the accident because she was instructed to transport National Guard pamphlets to her duty station. *Id.* at 1010. The Court held that because Murray failed to prove that Baker was required, or under orders, to transport the National Guard materials at the time of the accident, she was not engaged in a duty that would warrant extending federal responsibility to her commute. *Id.* Thus, Baker was not considered a federal employee under the FTCA at the time of the accident, and Murray could not obtain relief from the federal government through the FTCA.

Here, Martinez had been released early from her duty station around noon. At the time of the accident, Martinez was traveling home in her own vehicle after the end of training. Thus, the accident did not take place during her federal training exercise, and Martinez was not engaged in training at the time of the accident. The fact that Martinez was "on duty" for 48 hours does not necessarily mean that she was "engaged in training or duty" for that entire period, especially considering that training had been terminated early because of concerns relating to the weather. Further, simply because Martinez was found to be acting in the "line of duty" for the purpose of receiving coverage for her medical expenses does not mean she was "engaged in training or duty."

However, there remains an issue of material fact as to whether Martinez was carrying out a specific duty at the time of the accident. Martinez contends that Sergeant Rice had *ordered* her to provide fellow guardsman, Poe, transportation to and from the training drills that weekend and on previous weekends. If Martinez was indeed acting pursuant to a legitimate, authorized order, it is likely that Martinez was engaged in a duty under 32 U.S.C. § 502(a). However, Sergeant Rice's latter affidavit reflects that he merely *requested* Martinez to provide transportation, and that if Martinez had been transporting personnel upon order, she would have been provided a government vehicle, fuel, food and lodging. Here, Martinez and Poe paid for their travel out of pocket, split gas costs, and the two prearranged their travel between themselves. Given the

conflicting evidence, we conclude that there is a genuine issue of material fact as to whether Martinez was engaged in a National Guard duty at the time that she was transporting Poe back to the Treasure Valley and therefore, summary judgment was improperly granted on this basis.

## C. Whether a government employee is within the "course and scope of their employment" under I.C. § 6-904 is determined by Idaho's law of respondeat superior.

There is a second requirement within I.C. § 6-904(4) that must be shown for immunity to apply. The employee must be within the "course and scope of their employment" at the time of the negligence. The district court held that, in the alternative to immunity set forth in I.C. § 6-904(4), Martinez was immune because she was acting in the scope and course of her employment. This Court has previously determined that while exceptions to liability in I.C. § 6-904 apply to the state as a matter of right, they are only applicable to an employee if the employee is within the scope of his or her employment at the time of the negligent act or occurrence. *See Hoffer v. City of Boise*, 151 Idaho 400, 402–03, 257 P.3d 1226, 1228–29 (2011). Thus, for immunity to apply under I.C. § 6-904(4), National Guard members must be "engaged in training or duty" *and* must be acting within the "course and scope of their employment."

However, this Court has not previously addressed the meaning of the phrase "course and scope of employment" as used in I.C. § 6-904. The district court held that the special errand exception to the coming and going rule, traditionally applied only to workers' compensation cases, would apply to this case. Under the special errand exception, the district court found Martinez was acting within the course and scope of her employment under I.C. § 6-904. Teurlings asks this Court to borrow the coming and going rule from workers' compensation law and apply it to our analysis of I.C. § 6-904, but argues that the exceptions to the coming and going rule are inapplicable.

Martinez argues that the coming and going rule should not be applied, but if it is applied then its exceptions must also be utilized. Martinez advances the special errand and traveling employee exceptions, along with an "agreement" exception which this Court has never adopted, and asserts these exceptions establish Martinez was within the course and scope of her employment under I.C. § 6-904(4).

In Idaho, course and scope of employment is discussed in two distinct areas, first, in tort under the theory of respondeat superior and second, in the context of the statutory scheme of workers' compensation. We note the distinction between the compensation of an employee for injuries the employee sustained while serving the employer and extending responsibility to an

9

employer to compensate a third party for injuries caused by the negligence of an employee. As I.C. § 6-904 involves injuries to third parties, whether an employee's actions are within the course and scope of employment is a question governed by Idaho's principles of respondeat superior.

We decline to extend the coming and going rule and its exceptions to the law of respondeat superior. The coming and going rule dictates that employees are not within the course and scope of employment on their way to or from work. *Finholt v. Cresto*, 143 Idaho 894, 898, 155 P.3d 695, 699 (2007) (citing *Ridgway v. Combined Ins. Cos. of America*, 98 Idaho 410, 411, 565 P.2d 1367, 1368 (1977)). However, there are various exceptions to the coming and going rule including: (1) the special errand; (2) the traveling employee; (3) peculiar risk, and; (4) dual purpose doctrine. *See Freeman v. Twin Falls Clinic & Hosp.*, 135 Idaho 36, 38, 13 P.3d 867, 869 (2000). These exceptions bring an employee's acts back within the scope of employment even while traveling to or from work and generally serve to expand the course and scope of employment.

Our decision not to borrow this concept is based upon the different goals of workers' compensation and the doctrine of respondeat superior. A liberal interpretation of the scope of employment in workers' compensation cases is warranted in order to ensure certain recovery for injured workers, regardless of fault. *See Page v. McCain Foods, Inc.*, 141 Idaho 342, 346, 109 P.3d 1084, 1088 (2005). There is no such tradition of a liberal approach to course and scope questions when considering application of respondeat superior in order to impose tort liability onto an employer. Thus, "the relevant factors for determining whether an injury arises in the course and scope of employment for workers' compensation purposes are not necessarily the same factors which would determine whether an employee was acting within the scope of his employment for purposes of *respondeat superior* liability for injury to a third party." *Slade v. Smith's Mgmt. Corp.*, 119 Idaho 482, 494, 808 P.2d 401, 413 (1991). As we do not extend the coming and going rule to our analysis under I.C. § 6-904, we need not address the various exceptions discussed by both parties.

The proper analysis under I.C. § 6-904 turns on scope of employment as defined by respondeat superior. Under the doctrine of respondeat superior, "an employer is liable in tort for the tortious conduct of an employee committed within the scope of employment." *Finholt*, 143 Idaho at 897, 155 P.3d at 698. The scope of one's employment includes conduct (1) which is the

kind the employee is employed to perform, that (2) "occurs substantially within the authorized limits of time and space," and (3) "is actuated, at least in part, by a purpose to serve the master." *Richard J. and Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 133 Idaho 180, 184, 983 P.2d 834, 838 (1999) (quoting *Podolan v. Idaho Legal Aid Service, Inc.*, 123 Idaho 937, 944, 854 P.2d 280, 287 (Ct. App. 1993)). This inquiry is focused on the service to the employer; acts done to serve the employer fall within the scope of employment while acts "pursued for a purely personal purpose do not." *Finholt*, 143 Idaho at 897, 155 P.3d at 698 (citing *Wooley Trust*, 133 Idaho at 184, 983 P.2d at 838). We also look to whether the employer had the right to control the functions and duties of the agent at the time of the negligence. *See Van Vranken v. Fence-Craft*, 91 Idaho 742, 747, 430 P.2d 488, 493 (1967).

Because this Court looks to different facts when determining the scope of employment for the purpose of workers' compensation benefits as compared to imposing liability on an employer, we note that the National Guard's determination that a member was within the "line of duty" so as to receive medical benefits is not relevant for the determination of whether the member was acting within the scope of her employment under respondeat superior and I.C. § 6-904. *See, e.g., Walsh v. United States*, 31 F.3d 696, 699 (8th Cir. 1994). Thus, acting in the "line of duty" does not automatically expand the scope of employment beyond that recognized under Idaho's law of respondeat superior. *Hartzell v. United States*, 786 F.2d 964, 966 (9th Cir. 1986).

For guidance on remand, in addition to consideration of the National Guard's right to control Martinez's conduct at the time of the collision, three issues must be resolved in Martinez's favor before her conduct can be found to be within the scope of employment. First, it must be determined that driving from training and providing a ride to a fellow Guard member is the kind of work that Martinez was employed to perform. Second, Martinez must have been acting within the authorized time and space limits of her employment. Martinez and the district court relied on the Report of Investigation which indicates that Martinez was "in line of duty" at the time of the accident however, being in the "line of duty" does not necessarily bring Martinez within the time and space limits of her employment or extend the scope of employment to any activity the National Guard deems in the "line of duty." Finally, it must be determined that Martinez's travel with Poe was done, at least in part, in service to the National Guard.

**D. The district court did not abuse its discretion in denying Teurlings' motion to strike.**

Teurlings claims that the district court erred in denying his motion to strike Martinez's statement that she was "on duty with the Idaho National Guard" and Sergeant Rice's statement that Martinez "was on duty from 12:00 am on January 6, 2007." Teurlings argues that these statements are inadmissible legal conclusions. Martinez responds that the statements at issue were statements based on personal knowledge and thus, admissible. The district court denied Tuerlings' motion to strike, holding that the statements were not legal conclusions but facts about which the declarants had personal knowledge and were therefore admissible.

"The admissibility of evidence under I.R.C.P. 56(e) is a threshold question" that should be analyzed prior to applying the rules governing summary judgment. *Herrera v. Estay*, 146 Idaho 674, 680, 201 P.3d 647, 653 (2009). Under I.R.C.P. 56(e), "affidavits shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence." On review,

> This Court applies an abuse of discretion standard when reviewing a trial court's determination of the admissibility of testimony offered in connection with a motion for summary judgment. A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason.

*Fragnella v. Petrovich*, 153 Idaho 266, 273, 281 P.3d 103, 110 (2012) (citations omitted). The district court's determination on a motion to strike is also reviewed under this standard. *Id*. at 273–74, 281 P.3d at 110–11.

Teurlings relies on two federal cases that held legal conclusions are not factual findings and as such are inadmissible. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010); *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302–03 (11th Cir. 1989). Both of these cases, however, interpret Federal Rule of Evidence 803(8), which outlines the admissibility of public records. As Teurlings does not challenge the admissibility of the Report of Investigation, only the statements in the affidavits, the cases cited are unpersuasive. Teurlings offers no additional authority for the proposition that statements that a National Guard member is "on duty" are inadmissible legal conclusions.

Here, the district court found that the statements by Martinez and Rice were statements of fact of which they both had personal knowledge. This demonstrates the district court's use of the correct legal standard as outlined in I.R.C.P. 56(e). The district court acted within the bounds of

12

its discretion and reached its decision by the exercise of reason. Thus, we are unable to conclude that the district court abused its discretion by denying the motion to strike.

We take this opportunity to observe that the admission of these statements does not have the legal significance that Teurlings evidently fears. As stated above, it is well-accepted that finding a National Guard member was "on duty" or acting in the "line of duty" for National Guard purposes (such as provision of medical benefits) is distinct from a determination that the member was engaged in duty for purposes of determining a plaintiff's right to recover tort damages. *See, e.g., Walsh*, 31 F.3d at 699; *Hartzell,* 786 F.2d at 966. As there is a distinction between use of the term "on duty" for National Guard purposes and use of the term as a legal construct for the purposes of tort liability, to the extent that the statements were legal conclusions, those conclusions were not dispositive of the issue before the district court.

**E.  Neither party is entitled to attorney fees on appeal under I.C. § 12-121.**

Teurlings and Martinez both argue they are entitled to attorney fees on appeal under I.C. § 12-121. Pursuant to I.C. § 12-121, "the judge may award reasonable attorney fees to the prevailing party." This Court has stated that an "award of attorney fees under Idaho Code § 12-121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). However, this Court will not consider attorney fees if a party fails to argue how the appeal was defended unreasonably. *Chavez v. Canyon Cnty.*, 152 Idaho 297, 305, 271 P.3d 695, 703 (2012).

Here, Martinez is not entitled to fees as she is not the prevailing party on appeal. *Goodspeed v. Shippen*, 154 Idaho 866, 874, 303 P.3d 225, 233 (2013). Likewise, Teurlings is not entitled to attorney fees. The entirety of Teurlings' argument in support of his request for attorney fees is as follows:

> Should the Court rule in Mr. Teurlings' favor, Mr. Teurlings petitions this Court for an award of attorney fees and costs on appeal under I.C. § 12-121 and Rule 54. An award of attorney fees is appropriate on appeal under I.C. § 12-121 when the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 652, 39 P.3d 588, 592 (2001).

A party seeking an award of attorney fees must "support the claim with argument as well as authority." *Evans v. Sayler,* 151 Idaho 223, 228, 254 P.3d 1219, 1224 (2011) (citing *Crump v.*

13

*Bromley*, 148 Idaho 172, 176, 219 P.3d 1188, 1192 (2009)). Although Teurlings cited the appropriate legal standard, he has advanced no argument explaining why Martinez has frivolously defended this appeal. Accordingly, he is not entitled to attorney fees on appeal. *Bailey v. Bailey*, 153 Idaho 526, 532, 284 P.3d 970, 976 (2012).

## IV. CONCLUSION

We vacate the judgment of the district court dismissing the action against Martinez, we affirm the district court's denial of Teurlings' motion to strike, and we remand this matter to the district court for further proceedings consistent with this opinion. We award costs on appeal to Teurlings.

Chief Justice BURDICK and Justices EISMANN and W. JONES, **CONCUR**.

J. JONES, Justice specially concurring.

I fully concur in the Court's opinion. I have some concern about Sgt. Rice's affidavit testimony that he "instructed" Martinez to provide transportation to Poe to and from the drill, and his characterization of this instruction as "my order." Martinez' counsel emphasized that Martinez had been ordered by Sgt. Rice to transport Poe. According to counsel, "Martinez was carrying out a specific order from her superior officer to transport a fellow guardsman to Boise." Having served as a member of the U.S. military and having represented defendants in court-martial proceedings, I have to admit to some skepticism about the lawful nature of this purported order. A member of the military is obligated to obey a "lawful order," but not one issued without proper authority. The Idaho Code of Military Justice, which "applies to all members of the Idaho military not in federal service when they are in or lawfully ordered to be in a duty status" (I.C. § 46-1103), makes it an offense to fail "to obey any lawful order or regulation." I.C. § 46-1165.

Neither the Idaho Code of Military Justice nor the Uniform Code of Military Justice, which applies to active duty members of the U.S. military, defines what a lawful order is. However, the Manual for Courts-Martial (MCM) does contain such a definition. That definition applies to the Idaho military. I.C. § 46-1102. Article 90 of the MCM, which pertains to disobeyance of a superior commissioned officer, is explained as follows:

> An order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate. . . . The lawfulness of an order is a question of law to be determined by the military judge. . . . The commissioned officer issuing the order must have authority to give such an order. Authorization may be based on law, regulation, or custom of the service. . . . The

14

order must relate to military duty, which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service. The order may not, without such a valid military purpose, interfere with private rights or personal affairs.

MCM, para. 14c(2)(a)(i)−(iv). Article 91 makes it an offense to wilfully disobey the lawful order of a noncommissioned officer, such as Sgt. Rice. MCM, para. 15a(2). The lawful order criteria in Article 90 also apply in Article 91. The lawfulness criteria also apply in the context of "duty status" which "includes periods when a military member is on duty or is lawfully ordered to duty." I.C. § 46-1102(11). Since this case is being remanded for further proceedings, it would appear to be incumbent upon counsel for Martinez to establish that Sgt. Rice had the lawful authority to order Martinez to drive Poe to Boise when Martinez was apparently on her own time.

One further matter is of concern to me. It is my belief that members of the military are entitled to have the full support of their superiors. If the National Guard genuinely believed that Martinez was acting under a lawful order to drive Poe to Boise, I believe the Guard should have stepped forward to provide her with legal counsel to defend this case.