# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42658

| | | |
|---|---|---|
| BARBARA KELLY, | ) | |
| | ) | Coeur d'Alene, August 2015 |
| Claimant-Appellant, | ) | Term |
| | ) | |
| v. | ) | 2015 Opinion No. 102 |
| | ) | |
| BLUE RIBBON LINEN SUPPLY, INC., | ) | Filed: November 2, 2015 |
| Employer, and IDAHO STATE INSURANCE | ) | |
| FUND, Surety, | ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>reversed</u>, and the case is <u>remanded</u> for further proceedings consistent with this decision.

Goicoechea Law Offices, LLP, Lewiston, for appellant. Michael T. Kessinger argued.

Mosman Law Offices, Moscow, for respondents. Wynn R. Mosman argued.

_____

HORTON, Justice.

Barbara Kelly appeals an Industrial Commission decision. Kelly sustained injuries in an automobile accident when returning home from an Independent Medical Evaluation (IME) scheduled by the Idaho State Insurance Fund (Surety) in connection with an earlier industrial accident. The Commission concluded that Kelly's injuries were not compensable because they did not arise out of and in the course of her employment with Blue Ribbon Linen Supply, Inc. (Blue Ribbon). We reverse the Commission's decision and remand for further proceedings consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In lieu of a hearing, the parties submitted stipulated facts to determine whether Kelly was entitled to worker's compensation benefits arising from the accident. The following is a verbatim recitation of the stipulated facts:

1.    On September 16, 2013, Claimant Barbara Kelly (hereafter Claimant) was an employee of Blue Ribbon Linen Supply, Inc. (hereafter Blue

1

Ribbon), in Lewiston, Idaho. At said time, Blue Ribbon was insured for its obligations under the Idaho Workers' Compensation Act by the Idaho State Insurance Fund (hereafter Surety).

2. On or about September 16, 2013, Claimant, Employer, and Surety were subject to the provisions of Idaho's Worker's Compensation Law.

3. Claimant suffered a compensable workers' compensation injury when a cart rolled over her left foot while in the course and scope of her employment with Blue Ribbon on September 16, 2013.

4. Surety paid medical and time loss benefits to Claimant as a result of the injury to her left foot.

5. On or about November 8, 2013, Julie Estes, an agent of Surety, sent Claimant a letter, which read as follows:

> We [Surety] have arranged for you to be seen in an independent medical evaluation with Robert Friedman. This appointment is scheduled for November 15, 2013, at 1:00 p.m. and will be held at Kootenai Health Plaza, which is located at 1300 East Mullan Avenue, Post Falls, Idaho.
>
> Please make the necessary arrangements to keep this appointment and **bring copies of all x-rays/MRI films with you**. Failure to do so may result in the termination of benefits and the responsibility for any "no show" charges.
>
> You may submit a report of all travel expense to this office for reimbursement. This should include the date traveled, destination, and round trip mileage.

6. It is approximately 125 miles each way from Claimant's workplace in Lewiston, Idaho to Post Falls, Idaho.

7. Dr. Robert Friedman performs medical evaluations in Lewiston, Idaho. Appointments with Dr. Friedman were available in November in Post Falls and in December in Lewiston. Claimant was scheduled for the November appointment in Post Falls.

8. On November 15, 2013, Claimant traveled to Post Falls, Idaho, for the surety-scheduled medical evaluation. On said date she was still an employee of Blue Ribbon and was receiving time loss benefits from Surety.

9. Directly after meeting with Dr. Friedman, Claimant began her return trip from Post Falls, Idaho, to Lewiston.

10. Claimant did not make any stops or take any detours on her way home from the appointment with Dr. Friedman.

11. At 3:50 p.m. on November 15, 2013, on US 95 approximately five miles south of Potlach, it was snowing and the road was covered with snow. At said location, Claimant was southbound in her Ford Expedition when a northbound Ford F150 lost traction, crossed the centerline, and collided head-on

2

with Claimant's vehicle. Claimant's actions did not cause or contribute to the collision.

12. As a result of the automobile collision, Claimant suffered severe physical injuries to her lower extremities. Due to the extent of her injuries, Claimant's doctor restricted her from any weight-bearing on her lower extremities until further notice. As a result of the crash, Claimant was in a skilled nursing facility in Lewiston, Idaho, until February 26, 2014.

(bolded material in original). The Commission concluded that Kelly's injuries were not compensable because the injuries were the product of an intervening cause rather than Kelly's employment or original injury. Kelly timely appealed.

## II. STANDARD OF REVIEW

"When reviewing a decision by the Industrial Commission, this Court exercises free review over the Commission's conclusions of law, but will not disturb the Commission's factual findings if they are supported by substantial and competent evidence." *Knowlton v. Wood River Med. Ctr.*, 151 Idaho 135, 140, 254 P.3d 36, 41 (2011) (citing I.C. § 72-732). "To determine whether an accident occurred arising out of and in the course of Claimant's employment, the Court determines whether the Commission correctly applied the law . . . to the facts determined by the Commission."[1] *Combes v. State, Indus. Special Indem. Fund*, 130 Idaho 430, 432, 942 P.2d 554, 556 (1997).

## III. ANALYSIS

The sole issue before this Court is whether Kelly's injuries arose out of and in the course of her employment with Blue Ribbon.

In holding that Kelly's injuries did not arise out of and in the course of her employment with Blue Ribbon, the Commission relied on this Court's holding in *Kiger*, which dictates that "if there occurs, after the initial accident and injury, an intervening, independent, responsible, and culminating cause, the latter occurrence becomes the proximate cause." *Kiger v. Idaho Corp.*, 85 Idaho 424, 430, 380 P.2d 208, 211 (1963) (quoting *Linder v. City of Payette*, 64 Idaho 656, 659, 135 P.2d 440, 441 (1943)). The Commission concluded that the automobile accident that caused Kelly's injuries was the intervening, proximate cause of those injuries.

---

[1] Blue Ribbon argues that the question of whether an injury arose out of and in the course of employment is a question of fact. However, "[w]here there is no dispute in the evidence and it is not reasonably susceptible of more than one inference, the question of whether an accident to a workman arose out of and in the course of employment is a conclusion of law rather than a finding of fact and may be reviewed by this court." *Gage v. Express Pers.*, 135 Idaho 250, 253, 16 P.3d 926, 929 (2000). Because the parties stipulated to the relevant facts, the Commission simply applied the law to the stipulated facts. Thus, we exercise free review over the Commission's decision.

"To receive benefits under Idaho's worker's compensation regime, a claimant must establish that he suffered an injury as defined by Idaho Code § 72-102." *Vawter v. United Parcel Serv., Inc.*, 155 Idaho 903, 907, 318 P.3d 893, 897 (2014). Idaho's worker's compensation laws define "Injury" as "a personal injury caused by an accident *arising out of and in the course of any employment* covered by the worker's compensation law." I.C. § 72–102(18)(a). When there is no issue of whether there has been an accident, "the test for determining compensability is two-pronged, and the claimant must satisfy both elements to be entitled to compensation." *Kessler on Behalf of Kessler v. Payette Cnty.*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). "The claimant has the burden to show by a preponderance of the evidence that the accident in which he was injured (1) arose out of and (2) in the course of his employment." *Hamilton v. Alpha Servs., LLC*, 158 Idaho 683, 689, 351 P.3d 611, 617 (2015). "The words 'out of' have been held to refer to the origin and cause of the accident and the words 'in the course of' refer to the time, place, and the circumstances under which the accident occurred." *Dinius v. Loving Care & More, Inc.*, 133 Idaho 572, 574, 990 P.2d 738, 740 (1999). "An injury is deemed to be in the course of employment when it takes place while the worker is doing the duty which he is employed to perform." *Id.* at 575, 990 P.2d at 741. "The injury is considered to arise out of the employment when a causal connection is found to exist between the circumstances under which the work must be performed and the injury of which the claimant complains." *Id.*

The claimant in *Kiger* sustained injuries from an automobile accident while traveling for continuing medical treatment of a primary compensable injury, a slip and fall that occurred at her workplace. *Kiger*, 85 Idaho at 427–28, 380 P.2d at 209–10. This Court reasoned that the injuries from the automobile accident did not arise out of or in the course of the claimant's employment because the only link between those injuries and her employment was that the injuries were caused during an accident while traveling for treatment of a primary compensable injury. *Id.* at 430, 380 P.2d at 211.

Due to significant factual differences, we do not find our holding in *Kiger* to be controlling in this case. In *Kiger*, the claimant's trip to the doctor was not made at the employer's request; rather, it was made only for treatment of the original compensable injury. Kelly's trip was solely to attend the IME at Surety's request and for the benefit of Surety. Kelly had no meaningful opportunity to reject Surety's request that she attend the IME, as she was under the statutory duty imposed by Idaho Code section 72-433 to submit to an examination at Surety's

request. Failure to do so would have resulted in suspension of Kelly's right to receive workers' compensation benefits. I.C. § 72-434.

In our view, Kelly's situation is analogous to two situations where compensation is available to the worker: the special errand and traveling employee exceptions to the coming and going rule. "This Court has adopted the so-called 'coming and going rule,' which provides that 'compensation is not allowed to workers for injuries occurring on the way to or from work, based on the perception that such injuries are not sufficiently causally linked to employment.' " *Hamilton v. Alpha Servs., LLC*, 158 Idaho 683, 691, 351 P.3d 611, 619 (2015) (quoting *Pitkin v. W. Const.*, 112 Idaho 506, 507, 733 P.2d 727, 728 (1987)). "[T]here are various exceptions to the coming and going rule including: (1) the special errand; (2) the traveling employee; (3) peculiar risk, and; dual purpose doctrine." *Teurlings v. Larson*, 156 Idaho 65, 73–74, 320 P.3d 1224, 1232–33 (2014). "A liberal interpretation of the scope of employment in workers' compensation cases is warranted in order to ensure certain recovery for injured workers, regardless of fault." *Id.* at 74, 320 P.3d at 1233.

"The special errand exception is premised on the idea that an employee leaving his normal place of work to perform a special job for an employer is, nevertheless, still performing part of his normal job." *Finholt v. Cresto*, 143 Idaho 894, 898, 155 P.3d 695, 699 (2007). The special errand exception:

> is found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer. In such cases, an injury arising enroute from the home to the place where the work is performed, or from the place of performance of the work to the home, is considered as arising out of and in the course of the employment.

*Dameron v. Yellowstone Trail Garage*, 54 Idaho 646, 651, 34 P.2d 417, 418–19 (1934). For example, in *Trapp v. Sagle Vol. Fire Dept.*, 122 Idaho 655, 837 P.2d 781 (1992), the firefighter claimant was injured in an automobile accident while traveling to attend an EMT training course as requested by her employer. The Commission concluded the special errand exception applied. *Trapp*, 122 Idaho at 655, 837 P.2d at 781.

Kelly's injuries occurred in an analogous situation. Kelly's injuries were suffered during the discharge of a duty that was, at the very least, incidental to the nature of her employment and under the direction of her employer, Blue Ribbon. Under Idaho Code section 72-433, Kelly was

5

required to attend the IME "if requested by the employer" and Surety was required to reimburse Kelly for her travel expenses and time. If Kelly had failed to attend the IME, under Idaho Code section 72-434, her entitlement to worker's compensation benefits would have been suspended until she submitted to the IME. We are unable to discern how the Surety's requirement that Kelly submit to the IME is functionally different from the employer's request that the employee attend training in *Trapp.* Both involve a directive from the employer to the employee requiring performance of an act outside of the normal scope of employment.

We view a significant causal connection between Kelly's employment and her injuries, given that Blue Ribbon, acting through its Surety, directed Kelly's actions for Blue Ribbon's benefit. Here, the IME was employer-requested, with a doctor chosen by employer, at a time and place chosen by employer, and solely for employer's benefit under Idaho Code section 72-433. As the Commission correctly noted: "After all, rather than arrange an Idaho Code section 72-433 exam at a time and place more convenient to [Kelly], [S]urety arranged for an exam far removed from Claimant's residence, at a time of year that would expose her to dangerous conditions while traveling." Although the Commission noted that Kelly could have petitioned for relief from the IME, Kelly had no legal obligation to do so.

Likewise, Kelly's circumstances are analogous to situations that fall under the traveling employee exception to the coming and going rule. "When an employee's work requires him to travel away from the employer's place of business or his normal place of work, the employee is covered by worker's compensation." *Cheung v. Wasatch Elec.*, 136 Idaho 895, 897, 42 P.3d 688, 690 (2002). "This Court has recognized that the traveling employee doctrine does not require that an employee receive travel expenses while traveling or that traveling be a part of the employee's actual duties." *Id.* Here, Kelly was essentially required by her employer to travel away from her normal place of business, Lewiston, for an IME in Post Falls.

In short, the causal connection between Kelly's employment and the injuries she sustained as a result of the accident is sufficiently compelling that we hold that the injuries arose out of and in the course of her employment. Although Kelly claims that the Commission erred by not applying Larson's compensable consequences and quasi-course theories to her claim, *see* Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, ch. 10 (2010), in view of our decision, we do not decide this claim.

## IV. CONCLUSION

Kelly's injuries arose out of and in the course of her employment. Therefore, we reverse the Commission's September 26, 2014, decision and remand this matter for further proceedings consistent with this opinion. We award costs on appeal to Kelly.

Justices EISMANN, BURDICK and W. JONES **CONCUR**.

J. JONES, Chief Justice, specially concurring.

I fully concur in the Court's opinion. It is hard to understand why Kelly was required by the Respondents to travel about 100 miles in winter driving conditions to undergo the IME, when the physician was going to be in her home town in a matter of weeks. Had it not been for this thoughtless directive, she would not have been injured in the collision.

Aside from the merits, this case raises concerns about Industrial Commission procedures. Here, as in a number of other worker's compensation cases that have recently come before the Court, the Commission peremptorily discarded the referee's findings of fact, conclusions of law, and recommendation, providing absolutely no indication as to why it was doing so. The Commission merely said, "[t]he undersigned Commissioners have chosen not adopt the Referee's recommendation and hereby issue their own findings of fact, conclusions of law and order." Then, the referee's recommended decision was not even included in the record on appeal. In my mind, this is shoddy administrative practice.

Just as a hearing officer does for other State agencies in administrative proceedings, a referee acts as the eyes and ears of the Commission. Both hearing officers and referees hear live testimony and make credibility determinations that play into their factual findings. This case is a little different because it was submitted on stipulated facts so there was no occasion for the referee to make observational credibility determinations. However, in administrative cases before other agencies that are heard by hearing officers, the record would not be complete without the hearing officer's recommended decision. Neither should a case heard by the Commission under its own rules be considered complete if it does not include the referee's recommended decision.

When this case was heard on oral argument before this Court, counsel were requested to augment the record with the referee's recommended decision so that the Court could compare its analysis with that in the Commission's order. The augmentation was made. It appears that both the recommended decision and the order turned on the interpretation of our decision in *Kiger v.*

7

*Idaho Corp.*, 85 Idaho 424, 380 P.2d 208 (1963). Neither the referee nor the Commission were correct in strictly applying *Kiger*. Where both did rely on *Kiger* to deny Kelly's claim, one might wonder why the Commission felt it necessary to discard the referee's recommended decision. The primary difference between the two documents appears to be the manner in which Kelly's plight was viewed.

In its order, the Commission observed:

> Had [Kelly] refused to attend this exam, or had she otherwise frustrated the purposes of surety to obtain such an exam, she could have faced curtailment of workers compensation benefits and the suspension of proceedings before the Commission. It is argued that these facts warrant a different result than that which obtained in *Kiger*. However, we fail to see why this distinction should result in a different outcome, tempting though it may be. After all, rather than arrange an Idaho Code § 72-433 exam at a time and place more convenient to Claimant, surety arranged for an exam far removed from Claimant's residence, at a time of year that would expose her to dangerous conditions while traveling. While Claimant could have petitioned the Industrial Commission for relief from the scheduled exam, and therefore cannot be said to have been without recourse, she failed, for whatever reason, to pursue this, and so suffered the injuries that she assuredly would not have suffered "but for" the Idaho Code § 72-433 exam.

Thus, the Commission appears to place the onus upon Kelly to rectify the unwise decision to send her about 100 miles on slick roads in order to get an exam that she could have gotten in her home town several weeks later.

The referee took a somewhat more sympathetic view:

> Claimant's argument can be read to suggest a limited exception to the *Kiger* decision for those instances where a claimant is going to or from an appointment whose location and time is set exclusively by the surety, with no input or negotiation from the claimant, and where, if the claimant does not attend the appointment, her workers' compensation benefits will be suspended or terminated. This is an attractive argument under the present facts. It is easy to relate to Claimant's plight, where she was required to attend an IME over one hundred miles from her home, when the same doctor would be conducting those examinations in her town the following month. Compounding the issue, the IME was scheduled for a time when snow was certainly possible, and in fact was falling, at least as of her return trip. All travelers on US 95 on November 15, not just Claimant, were subjected to the same road conditions.
>
> In such a situation, it is hard not to sympathize with Claimant, and easy to assign the risk of Claimant's travel to the surety.

Reading between the lines of the referee's analysis, one might think that the referee was subliminally advocating an exception from the *Kiger* holding, somewhat along the lines of the Court's decision.

Regardless of the Commission's reasons for discarding the referee's recommended decision, I believe it was incumbent upon the Commission to include the recommended decision in the record and to at least briefly explain why it was discarded. The failure to include the referee's recommended decision was remedied by the courteous agreement of counsel for the parties to augment it into the record. The Commission should hereafter take it upon itself to ensure that a referee's recommended decision is always included as part of the record on appeal. The Commission should also provide some discussion in future cases as to why it made a determination to discard the referee's recommendation and issue its own findings of fact, conclusions of law, and order. This is particularly critical where there may be some difference between the facts found by the referee and those made by the Commission. Otherwise, this Court does not have a complete picture of the case upon which to base an informed decision on appeal.